1
2
3
4

Douglas N. Letter, *General Counsel* (D.C. Bar No. 253492)
Todd B. Tatelman, *Deputy General Counsel* (VA Bar No. 66008)
Megan Barbero, *Associate General Counsel* (MA Bar No. 668854)
Kristin A. Shapiro, *Assistant General Counsel* (D.C. Bar No. 1007010)
Brooks M. Hanner, *Assistant General Counsel* (D.C. Bar No. 1005346)
Sarah E. Clouse, *Attorney* (MA Bar No. 688187)

5
6
7
8

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

9

*Counsel for Amicus Curiae the United States House of Representatives*

10
11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

12
13
14
15
16
17
18
19

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | Case No. 4:19-cv-00872-HSG |
| *Plaintiffs*, | P.I. Hearing Date: May 17, 2019 |
| | Time: 10:00 AM |
| v. | **BRIEF OF THE U.S. HOUSE OF** |
| DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*, | **REPRESENTATIVES AS *AMICUS*** |
| | ***CURIAE* IN SUPPORT OF** |
| *Defendants*. | **PLAINTIFFS' MOTION FOR A** |
| | **PRELIMINARY INJUNCTION** |

20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PROHIBITING
DEFENDANTS FROM SPENDING FUNDS ON A BORDER WALL WITHOUT A VALID
APPROPRIATION ....................................................................................................................... 3

    A.  Congress Did Not Appropriate $8.1 Billion for a Border Wall ........................................... 3

    B.  Defendants' Asserted Authority Does Not Excuse Their Expenditure of Funds on a
        Border Wall in the Absence of a Valid Appropriation ......................................................... 7

CONCLUSION .......................................................................................................................... 11

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*City & Cty. of San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) ...................................................................... 3, 4

4

*Delta Data Sys. Corp. v. Webster*,
    744 F.2d 179 (D.C. Cir. 1984)............................................................................ 3

5

6

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013)...................................................................... 2, 11

7

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ........................................................................ 2, 11

8

9

*U.S. House of Representatives v. Mnuchin*,
    1:19-cv-00969 (D.D.C.)...................................................................................... 3

10

11

*U.S. Dep't of the Navy v. FLRA*,
    665 F.3d 1339 (D.C. Cir. 2012).................................................................. 1, 3, 4

12

13

**Constitution**

14

U.S. Const. art. I, § 9, cl. 7 ...................................................................................... 1

15

**Statutes**

16

17

10 U.S.C. § 284 ................................................................ 1, 2, 3, 7, 8, 10, 11

18

10 U.S.C. § 2801 .................................................................................................. 10

19

31 U.S.C. § 1532 .................................................................................................... 8

20

Consolidated Appropriations Act, 2019, Pub L. No. 116-6 (2019)
    (to be printed at 133 Stat. 13)........................................................................... 6

21

22

Department of Defense and Labor, Health and Human Services, and Education
    Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No.
    115-245 (2018) (to be printed at 132 Stat. 2981)........................................... 8, 9

23

24

Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5 (2019)
    (to be printed at 133 Stat. 10)........................................................................... 6

25

26

Pub. L. No. 93-238, 87 Stat. 1026 (1974) .............................................................. 9

27

28

**Other Authorities**

*The Federalist No. 51* (James Madison) ........................................................................ 1

Further Additional Continuing Appropriations Act, 2019, H.R. 695, 115th Cong. (2018) ........... 5

H. Rep. No. 93-662 (1973) ...................................................................................... 9, 10

H. Rep. 99-106 (1985) .............................................................................................. 10

BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE* (4:19-cv-00872-HSG)

1

**INTRODUCTION**

2

The United States House of Representatives submits this *amicus* brief in support of

3

plaintiffs' motion for a preliminary injunction.  The House has a compelling institutional interest

4

in the Court's grant of expedited relief prohibiting defendants from spending federal funds without

5

a valid appropriation.  This case arises out defendants' flagrant disregard for the bedrock

6

constitutional principle that "[n]o Money shall be drawn from the Treasury, but in Consequence of

7

Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7.  The Appropriations Clause vests

8

Congress with "exclusive power over the federal purse," and it is "one of the most important

9

authorities allocated to Congress in the Constitution's 'necessary partition of power among the

10

several departments.'"  *U.S. Dep't of the Navy v. FLRA*, 665 F.3d 1339, 1346 (D.C. Cir. 2012)

11

(quoting *The Federalist No. 51* (James Madison)).  Notwithstanding this clear constitutional

12

command, on the same day that President Trump signed legislation providing only $1.375 billion

13

for the construction of barriers along the southern border, he announced that his Administration

14

would in fact spend up to $8.1 billion.[1]  To support this expenditure, President Trump declared a

15

national emergency, despite acknowledging that whether the amount spent is "$8 billion or $2

16

billion or $1.5 billion, it's going to build a lot of wall" and stating that "I didn't need to do this."[2]

17

This decision to build a border wall in the absence of a valid appropriation usurps Congress's

18

authority under the Appropriations Clause.

19

Attempting to paper over its unconstitutional expenditure of funds, and as is relevant in this

20

case, the Administration incorrectly asserts the authority to spend "[u]p to $2.5 billion under the

21

Department of Defense funds transferred for Support for Counterdrug Activities," 10 U.S.C.

22

§ 284.[3]  Section 284 authorizes the Secretary of Defense to construct fences to block drug

23

smuggling corridors along the border.  The House understands that most of the fiscal year 2019

24

25

[1] *See Fact Sheet: President Donald J. Trump's Border Security Victory*, White House (Feb. 15, 2019) (Border Victory Fact Sheet), http://tinyurl.com/WHBorderVictory.

26

[2] *Remarks by President Trump on the National Security and Humanitarian Crisis on Our*

27

*Southern Border*, White House (Feb. 15, 2019, 10:39 AM) (Feb. 15 Rose Garden Remarks), http://tinyurl.com/TrumpRoseGardenRemarks; *see* Proclamation No. 9844, 84 Fed. Reg. 4949 (Feb. 20, 2019) (National Emergency Proclamation).

28

[3] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory.

funding Congress appropriated for such purposes has already been used.  Thus, defendants plan to spend nearly $2.5 billion that Congress appropriated for *other* purposes on the construction of a border wall under the section – and defendants have already transferred $1 billion for such construction and awarded contracts against this funding.  Defendants claim that section 8005 of the 2019 Department of Defense Appropriations Act authorizes the transfer of these funds.  However, that section only authorizes transfers for "higher priority items, based on unforeseen military requirements" and "in no case where the item for which funds requested has been denied by Congress."  In this case, the transfers are not based on "unforeseen military requirements," and President Trump's request for up to $5 billion for a border wall was "denied by Congress."  Accordingly, section 8005 provides no authority for defendants' expenditure of transferred funds on a border wall under section 284 – and, absent a valid Congressional appropriation, that expenditure violates the Appropriations Clause.

Underscoring the Administration's disregard for the Constitution, Mick Mulvaney, Acting White House Chief of Staff and Director of the Office of Management and Budget, recently stated that the wall "is going to get built with or without Congress."[4]  The Appropriations Clause dictates, however, that defendants may only spend money to build a wall *with* Congress.  Even the monarchs of England long ago lost the power to raise and spend money without the approval of Parliament.[5]

Plaintiffs are therefore very likely to succeed on the merits of their claims that defendants are unconstitutionally transferring and spending funds under section 284 on the construction of a border wall.  Because "the Constitution is the ultimate expression of the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (quotation marks omitted), and "all citizens have a stake in upholding the Constitution," *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quotation marks omitted), this Court should issue a preliminary injunction prohibiting defendants

---

[4] Andrew O'Reilly, *Mulvaney Says Border Wall Will Get Built, 'With or Without' Funding from Congress*, Fox News (Feb. 10, 2019), https://tinyurl.com/MulvaneyFoxNewsSunday.
[5] *See The Civil War: The Long Parliament*, U.K. Parliament, https://tinyurl.com/UKLongParliament (last visited Apr. 10, 2019) (discussing Parliament's condemnation of King Charles I's "personal rule" from 1629-1640 and Parliament's declaration in the 1640s that nonparliamentary taxation would be illegal).

1    from spending funds on the construction of a border wall in the absence of a valid Congressional

2    appropriation.[6]

3                                        **ARGUMENT**

4    **THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PROHIBITING
     DEFENDANTS FROM SPENDING FUNDS ON A BORDER WALL WITHOUT A VALID**

5    **APPROPRIATION**

6             "Decisions of the Supreme Court and this Court have strictly enforced the constitutional

7    requirement . . . that uses of appropriated funds be authorized by Congress." *FLRA*, 665 F.3d at

8    1342; *see also City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018).  Indeed,

9    the Executive Branch cannot buy so much as a single plank of wood without a valid appropriation.

10   *See FLRA*, 665 F.3d at 1346-47.  In considering whether defendants' proposed expenditures comply

11   with Congress's specific statutory limitations, "it is the court that has the last word and it should

12   not shrink from exercising its power." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 202 (D.C.

13   Cir. 1984) (quotation marks and punctuation omitted); *accord FLRA*, 665 F.3d at 1349.  As

14   explained below, defendants' expenditure of funds under section 284 on the construction of a

15   border wall has not been authorized by Congress.  In the absence of a valid Congressional

16   appropriation, this transfer and expenditure violates the Appropriations Clause.  The Court should

17   enjoin defendants' unconstitutional activities.  Plaintiffs' request for preliminary injunctive relief

18   is particularly urgent given that defendants have begun awarding contracts to construct a border

19   wall without a valid appropriation.

20            **A.  Congress Did Not Appropriate $8.1 Billion for a Border Wall**

21            Congress decidedly rejected President Trump's request for $5 billion to build a border wall.

22   Indeed, Congress's rejection of President Trump's request precipitated the longest Federal

23   Government shutdown in history.  In the absence of a valid appropriation, the Administration's

24

25

26            [6] On April 5, 2019, the House filed suit in the U.S. District Court for the District of
     Columbia, seeking redress for its injury caused by defendants' unconstitutional actions.  *See U.S.*

27   *House of Representatives v. Mnuchin*, 1:19-cv-00969 (D.D.C.).  The House submits this amicus
     brief in further defense of its constitutional authority.

28

                                             3

1    expenditure of funds on the construction of a border wall plainly violates the Appropriations

2    Clause. *See City & Cty. of San Francisco*, 897 F.3d at 1231; *FLRA*, 665 F.3d at 1342.

3        Specifically, for fiscal year 2019, President Trump officially requested from Congress "$1.6

4    billion to construct approximately 65 miles of border wall."[7]   Around July 2018, however,

5    President Trump informally "pressed Republicans to give him $5 billion as a down payment on his

6    wall."[8]   President Trump never amended his formal budget request, nor did he provide any

7    additional details concerning his informal request for $5 billion.

8        The initial Senate appropriations bill for DHS included $1.6 billion for approximately 65

9    miles of border fencing – the figure officially requested by the White House.[9]  S. 3109, 115th

10   Cong., tit. 2 (as reported by S. Comm. on Appropriations, June 21, 2018).  Democrats indicated

11   that they would agree to pass the measure "so long as the language d[id] not *require* [the $1.6

12   billion] to be spent on the wall."[10]  Near the end of the 115th Congress, however, Congress and the

13   President reached an impasse on appropriations for a border wall.

14       On December 11, 2018, President Trump held a televised meeting with Speaker of the

15   House (then-Minority Leader) Nancy Pelosi and Senate Minority Leader Chuck Schumer to

16   negotiate fiscal year 2019 appropriations for a border wall.[11]  At that meeting, President Trump

17   reiterated his demand for $5 billion for a border wall.[12]  He also warned that "[i]f we don't get what

18   we want one way or the other, whether it's through you, through a military, through anything you

---

[7] Office of Mgmt. & Budget, *Fiscal Year 2019: Efficient, Effective, Accountable: An American Budget* 57 (2018), http://tinyurl.com/WHFY19BudgetRequest; *see also Stronger Border Security: 2019 Budget Fact Sheet*, White House (Feb. 2018), http://tinyurl.com/WHFY18BudgetFactSheet (noting request for "1.6 billion for new border wall in locations identified by the Border Patrol as necessary to obtain operational control of the border and impede illegal crossings").

[8] Rachel Bade, *Immigration Storm Bears Down on Republicans*, Politico (July 2, 2018, 5:05 AM), http://tinyurl.com/PoliticoImmigrationStorm.

[9] *See* Lindsey McPherson, *$1.6 Billion for Border Security, Not Just Wall, Could Be Agreed To, Hoyer Says*, Roll Call (Dec. 4, 2018, 12:46 PM), http://tinyurl.com/RollCallDec18.

[10] *Id.* (emphasis added).

[11] Aaron Blake, *Trump's Extraordinary Oval Office Squabble with Chuck Schumer and Nancy Pelosi, Annotated*, Wash. Post (Dec. 11, 2018), https://tinyurl.com/WaPoOvalOfficeSquabble.

[12] *Id.*

want to call, I will shut down the government, absolutely."[13]  He declared, "I am proud to shut down the government for border security."[14]

On December 19, 2018 – two days before funding for nine federal departments, including DHS, was set to expire – the Senate passed a continuing resolution to fund the Government through February 8, 2019.[15]  The Senate resolution did not include funding for a border wall.[16]  The next day, the House approved a short-term funding bill appropriating $5.7 billion for "U.S. Customs and Border Protection – Procurement, Construction, and Improvements."[17]  However, because "Democrats w[ere] not . . . willing to support $5 billion in wall funding," the Senate never considered the House's version of the legislation.[18]

Consistent with President Trump's threats, appropriations for a substantial portion of the Federal Government expired on December 21, 2018, *see* Pub. L. No. 115-298 (2018) (to be published at 132 Stat. 4382), beginning the longest Federal Government shutdown in history.  On January 2, 2019, Speaker Pelosi stated that the incoming House would provide "nothing for the wall."[19]  On January 8, 2019, President Trump addressed the nation from the Oval Office, stating that "there is a growing humanitarian and security crisis at our southern border."[20]  He stated that his "administration ha[d] presented Congress with a detailed proposal to secure the border,"

---

[13] *Id.*

[14] *Id.*

[15] *See* Further Additional Continuing Appropriations Act, 2019, H.R. 695, 115th Cong. § 101(1) (Dec. 19, 2018).

[16] *See id.*

[17] *See* H.R. 695, 115th Cong. § 141 (Dec. 20, 2018).

[18] *See* Bo Erickson et al., *House Passes Spending Bill with $5 Billion Border Wall Funding, Increasing Likelihood of Shutdown*, CBS News (Dec. 20, 2018, 9:00 PM), http://tinyurl.com/CBSHousePassesBill.

[19] Tal Axelrod, *Pelosi on Negotiations with Trump: "Nothing for the Wall,"* Hill (Jan. 2, 2019, 5:48 PM), http://tinyurl.com/HillNothingForWall.

[20] *Full Transcripts: Trump's Speech on Immigration and the Democratic Response*, N.Y. Times (Jan. 8, 2019) (National Address Transcript), http://tinyurl.com/TrumpNationalAddress.

1    including "$5.7 billion for a physical barrier."[21]  He implored Congress to "do[] its job" and "pass

2    a bill that ends this crisis."[22]

3         On January 25, 2019, after it became apparent that the Government's closure was causing

4    serious disruption throughout the nation, President Trump agreed to end the shutdown by signing

5    a continuing resolution to fund the Government through February 14, 2019.[23]  Between January 25

6    and February 14, a bipartisan conference committee was established to negotiate a deal to fund the

7    Government for fiscal year 2019.[24]  The committee ultimately reached a compromise that included

8    $1.375 billion for fencing along the border.[25]

9         On February 14, 2019, Congress passed the Consolidated Appropriations Act, 2019.  Pub

10   L. No. 116-6 (2019) (to be printed at 133 Stat. 13).  The Act appropriated $1.375 billion for

11   construction of fencing in the Rio Grande Valley area of the border but provided that in that area

12   "[n]one of the funds made available by this Act or prior Acts are available for the construction of

13   pedestrian fencing – (1) within the Santa Ana Wildlife Refuge; (2) within the Bentsen-Rio Grande

14   Valley State Park; (3) within La Lomita Historical Park; (4) within the National Butterfly Center;

15   or (5) within or east of the Vista del Mar Ranch tract of the Lower Rio Grande Valley National

16   Wildlife Refuge."  *Id.* § 231, 133 Stat. 28.  Congress limited the funding for new fencing to

17   "operationally effective designs" that had been deployed as of 2017, "such as currently deployed

---

18          [21] *Id.*; *see also* Letter from Russell T. Vought, Acting Dir., Office of Mgmt. & Budget, to
19   Senator Richard Shelby, Chairman, Senate Comm. on Appropriations (Jan. 6, 2019),
20   http://tinyurl.com/ShelbyLettertoApprops.  The process for submitting and amending budget and
     appropriations requests to Congress is subject to rigorous and well-established guidelines and
21   procedures that were not followed here.  *See generally* Office of Mgmt. & Budget, OMB Circular
     No.   A-11,   *Preparation,   Submission,   and   Execution   of   the   Budget*  (2018),
22   https://tinyurl.com/OMBCircularA11;   U.S.   Gov't   Accountability   Office,   GAO-16-464SP,
     *Principles of Federal Appropriations Law* 2-15 (4th ed. 2016) (noting "long and exhaustive
23   administrative process of budget preparation and review"), https://tinyurl.com/GAORedBook.
             [22] National Address Transcript, http://tinyurl.com/TrumpNationalAddress.
24           [23] *See* Further Additional Continuing Appropriations Act, 2019, Pub. L. No. 116-5 (2019)
25   (to be printed at 133 Stat. 10); Kevin Liptak, *Flight Delays Pile Pressure on Trump Amid Shutdown*,
     CNN (Jan. 25, 2019, 12:17 PM), http://tinyurl.com/CNNFlightDelays.
26           [24] *See* Jacob Pramuk, *Trump Signs Bill to Temporarily Reopen Government after Longest
     Shutdown in History*, CNBC (Jan. 25, 2019, 9:58 PM), https://tinyurl.com/CNBCTrumpSignsBill.
27           [25] Senate Appropriations Comm., *Summary of DHS Fiscal Year 2019 Appropriations
     Agreement*, 2 (2019), http://tinyurl.com/SenateFY19AppropsSummary.
28

1    steel bollard designs, that prioritize agent safety." *Id.* § 230(b), 133 Stat. 28.  No other funding was

2    designated for the construction of a border wall.

3        On February 15, 2019, President Trump signed the 2019 Consolidated Appropriations Act

4    into law.[26]  Yet, on the same day he signed the Act, President Trump expressed his dissatisfaction

5    with the $1.375 billion that Congress had appropriated and announced that his Administration

6    would instead spend up to $8.1 billion on construction of a border wall.[27]  To use the words of Mr.

7    Mulvaney, the Administration decided to build the wall "without Congress."[28]

8        Simply put, this is emphatically not how the Constitution designed the appropriations

9    process to operate: the Appropriations Clause dictates that defendants may only spend funds to

10    build a border wall *with* Congress.  Because Congress has not appropriated $8.1 billion for the

11    construction of a border wall, defendants may not constitutionally spend this amount on such

12    construction.

13

14       **B.  Defendants' Asserted Authority Does Not Excuse Their Expenditure of Funds on a Border Wall in the Absence of a Valid Appropriation**

15        Defendants attempt to avoid the constitutional requirements by asserting the authority to

16    spend "[u]p to $2.5 billion under the Department of Defense funds transferred for Support for

17    Counterdrug Activities," 10 U.S.C. § 284.[29]  However, defendants are not authorized to spend up

18    to $2.5 billion of transferred funds under section 284 on the construction of a border wall, and

19    therefore this provision provides no justification for the Administration's blatant circumvention of

20    Congress's constitutional authority over appropriations.

21        Section 284(a) provides that "[t]he Secretary of Defense may provide support for the

22    counterdrug activities . . . of any other department or agency of the federal government" if "such

23    support is requested[] by the official who has responsibility for the counterdrug activities . . . of the

24

25    [26] *See Statement by the President*, White House (Feb. 15, 2019), https://tinyurl.com/WHTrumpStatement.

26    [27] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory; Feb. 15 Rose Garden Remarks, http://tinyurl.com/TrumpRoseGardenRemarks.

27    [28] Andrew O'Reilly, *Mulvaney Says Border Wall Will Get Built, 'With or Without' Funding from Congress*, Fox News (Feb. 10, 2019), https://tinyurl.com/MulvaneyFoxNewsSunday.

28    [29] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory.

department or agency of the Federal Government[.]" 10 U.S.C. § 284(a), (a)(1)(A). Section 284(b) further provides that "[t]he purposes for which the Secretary may provide support" include "[c]onstruction of roads and fences and installation of lighting to block drug smuggling corridors across international boundaries of the United States." *Id.* § 284(b), (b)(7). Authority under this section does not depend on the President declaring a national emergency.

For fiscal year 2019, Congress appropriated $517.171 million to the Drug Interdiction and Counterdrug Activities appropriation fund (drug interdiction fund), which is the source of funding for counter-narcotics support under section 284. Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No. 115-245, div. A, tit. VI (2018) (to be printed at 132 Stat. 2981, 2997). The House understands that most of this funding has already been used. To spend up to $2.5 billion under section 284, defendants plan to first transfer funds that Congress appropriated for other purposes into the drug interdiction fund.[30] On March 25, 2019, defendants transferred an initial batch of $1 billion from funds that Congress appropriated for military personnel costs to the drug interdiction fund.[31] And on April 9, 2019, the Department of Defense (DOD) notified the House that contracts have been awarded against this funding.[32] DOD has also announced that "[t]hese funds will be used to support DHS's request to build 57 miles of 18-foot-high pedestrian fencing, constructing and improving roads, and installing lighting within the Yuma and El Paso Sectors of the border[.]"[33]

It is a fundamental principle of appropriations law that "[a]n amount available under law may be withdrawn from one appropriation account and credited to another or to a working fund *only when authorized by law*." 31 U.S.C. § 1532 (emphasis added). Defendants incorrectly claim that section 8005 of the 2019 Department of Defense Appropriations Act authorizes the transfers here. In pertinent part, section 8005 provides that

---

[30] *See* Border Victory Fact Sheet, http://tinyurl.com/WHBorderVictory.
[31] *See* Office of the Under Secretary of Defense (Comptroller), DOD Serial No. FY 19-01 RA, Reprogramming Action (Mar. 25, 2019), https://tinyurl.com/March25Transfer.
[32] *See* Press Release, U.S. Dep't of Def., Contracts for April 9, 2019 (Apr. 9, 2019), http://tinyurl.com/DoDApril9Contracts.
[33] Press Release, U.S. Dep't of Def., DOD Authorizes Support to Counter Drug Border Security (Mar. 25, 2019), http://tinyurl.com/DoDMarch25PressRelease.

[u]pon determination by the Secretary of Defense that such action is necessary in the national interest, he may, with the approval of the Office of Management and Budget, transfer not to exceed $4,000,000,000 of working capital funds of the Department of Defense or funds made available in this Act to the Department of Defense for military functions (except military construction) between such appropriations or funds or any subdivision thereof, to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred: *Provided*, That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress.

Pub. L. No. 115-245, § 8005, 132 Stat. 2981, 2999. Three limitations on the transfer authority provided by this section independently preclude defendants from transferring funds – including the $1 billion already transferred – to construct a border wall.

*First*, section 8005 only authorizes transfers of funds "for higher priority items, based on unforeseen military requirements." Congress included this limitation to confine DOD's transfer authority to situations where unanticipated circumstances justify a departure from Congress's previously authorized spending. For example, in the past, DOD has used this authority to transfer funds to pay for unexpected hurricane and typhoon damage to bases.[34] Here, defendants' supposed need to transfer money clearly does not arise from unforeseen circumstances. President Trump has been demanding $5 billion for a border wall since summer 2018,[35] and he has been complaining about a supposed crisis at the border since the start of his campaign.[36] Defendants' alleged need to build a border wall was therefore entirely foreseen – Congress simply disagreed with President Trump's opinion that $5 billion for a border wall was necessary and proper.

*Second*, section 8005 does not authorize the transfer of funds in cases "where the item for which funds are requested has been denied by the Congress." The "denied by the Congress" restriction was added to DOD's transfer authority starting in fiscal year 1974, to "tighten congressional control of the reprogramming process." H. Rep. No. 93-662, at 16 (1973); *see* Pub. L. No. 93-238, § 735, 87 Stat. 1026, 1044 (1974). The House committee report on the 1974

---

[34] Office of the Under Secretary of Defense (Comptroller), DOD Serial No. FY 04-37 PA, Reprogramming Action (Sept. 3, 2004), http://tinyurl.com/DOD2004ReprogrammingAction.

[35] *See* Rachael Bade, *Immigration Storm Bears Down on Republicans*, Politico (July 2, 2018, 5:05 AM), http://tinyurl.com/PoliticoImmigrationStorm.

[36] *See Here's Donald Trump's Presidential Announcement Speech*, Time (June 16, 2015), http://tinyurl.com/TrumpAnnouncement.

9

1    appropriations bill explained that "[n]ot frequently, but on some occasions, the Department ha[d]

2    requested that funds which have been specifically deleted in the legislative process be restored

3    through the reprogramming process," and that "[t]he Committee believe[d] that to concur in such

4    actions would place committees in the position of undoing the work of the Congress."  H. Rep. No.

5    93-662, at 16.  Indeed, of considerable significance here, the Committee stated that such a position

6    would be "untenable."  *Id.*  Consistent with its purpose, this sort of appropriations restriction is

7    intended to be "construed strictly" to "prevent the funding for programs which have been

8    considered by Congress and for which funding has been denied."  *See* H. Rep. No. 99-106, at 9

9    (1985) (discussing analogous appropriations restriction in Pub. L. No. 99-169, § 502(b), 99 Stat.

10   1005 (codified at 50 U.S.C. § 3094(b))).

11          In the striking factual circumstances surrounding the Administration's repeated demands

12   for border wall funding – which culminated in the longest Federal Government shutdown in history

13   – Congress's rejection of President Trump's request for $5 billion for a border wall was absolutely

14   clear.  *See supra* section A.  DOD's use of its transfer authority to restore the funds "which have

15   been considered by Congress and . . . denied," H. Rep. No. 99-106, at 9, is therefore "untenable,"

16   H. Rep. No. 93-662, at 16.

17          *Finally*, section 8005 does not authorize transfers for "military construction."  Section

18   2801(a) provides that "[t]he term 'military construction' as used in this chapter or any other

19   provision of law includes any construction development, conversion, or extension of any kind

20   carried out with respect to a military installation."  10 U.S.C. § 2801(a).  For the reasons set forth in

21   the House's separate amicus brief in *Sierra Club v. Trump*, No. 4:19-cv-00872-HSG (filed Apr. 12,

22   2019), the construction of a border wall does not constitute "military construction" because the

23   border is not a "military installation."  If, however, the Court were to hold that the construction of

24   a border wall *does* constitute "military construction" – as defendants appear to urge, *id*. – then

25   defendants' transfer of funds is not authorized under section 8005.

26          Accordingly, defendants' transfer and expenditure of up to $2.5 billion to construct a border

27   wall under section 284 is unauthorized and violates the Appropriations Clause.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Defendants have evaded the Constitution in their haste to build a wall along the southern border "with or without Congress."  The Constitution – not President Trump's desire to build the wall "faster" – is the "ultimate expression of the public interest," *Gordon*, 721 F.3d at 653 (quotation marks omitted), and "all citizens have a stake" in ensuring that defendants do not irrevocably offend that document during the period required to litigate this case, *Hernandez*, 872 F.3d at 996 (quotation marks omitted).  The Court should therefore issue a preliminary injunction prohibiting defendants from transferring and spending funds in excess of what Congress appropriated for counter-narcotics support under 10 U.S.C. § 284 on the construction of a wall along the southern border.

1    Respectfully submitted,

2    /s/ Douglas N. Letter
     DOUGLAS N. LETTER (D.C. Bar No. 253492)
3        General Counsel
     TODD B. TATELMAN (VA Bar No. 66008)
4        Deputy General Counsel
     MEGAN BARBERO (MA Bar No. 668854)
5        Associate General Counsel
     KRISTIN A. SHAPIRO (D.C. Bar No. 1007010)
6        Assistant General Counsel
     BROOKS M. HANNER (D.C. Bar No. 1005346)
7        Assistant General Counsel
     SARAH E. CLOUSE (MA Bar No. 688187)
8        Attorney

9

10   OFFICE OF GENERAL COUNSEL[*]
     U.S. HOUSE OF REPRESENTATIVES
11   219 Cannon House Office Building
     Washington, D.C.  20515
12   (202) 225-9700 (telephone)
     (202) 226-1360 (facsimile)
13   douglas.letter@mail.house.gov

14   Counsel for Amicus Curiae the United States House
     of Representatives
15
     April 15, 2019
16

17

18

19

20

21

22

23

24

25
     _____
26   [*] Attorneys for the Office of General Counsel for the U.S. House of Representatives are
     "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any
27   proceeding before any court of the United States or of any State or political subdivision thereof
     without compliance with any requirements for admission to practice before such court."  2 U.S.C.
28   § 5571.

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on April 15, 2019, I caused the foregoing document to be filed via the

3  U.S. District Court for the Northern District of California's CM/ECF system, which I understand

4  caused service on all registered parties.

5

6                                        */s/ Douglas N. Letter*
                                          Douglas N. Letter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28