JAY ALAN SEKULOW (N.D. Cal. # 496335)
 *Counsel of Record*
STUART J. ROTH*
ANDREW EKONOMOU*
JORDAN SEKULOW*
HARRY G. HUTCHISON*
MILES L. TERRY*
MARK GOLDFEDER*
BENJAMIN P. SISNEY (DC Bar # 1044721)
 (*Pro Hac Vice* Application Forthcoming)
**AMERICAN CENTER FOR LAW AND JUSTICE**
201 Maryland Avenue, NE
Washington, DC 20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: sekulow@aclj.org
*Counsel for Amicus Curiae*

ROBERT H. TYLER, CA Bar No. 179572
NADA N. HIGUERA, CA Bar No. 299819
JAMES A. LONG, CA Bar No. 273735
Tyler & Bursch, LLP
25026 Las Brisas Road, Suite 110
Murrieta, California 92562
Tel: 951-600-2733
Fax: 951-600-4996
rtyler@tylerbursch.com
nhiguera@tylerbursch.com
jlong@tylerbursch.com
*Counsel for Amicus Curiae,*
 *The American Center for Law & Justice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case Action No. 19-cv-00872-HSG |
| | ) |
| DONALD J. TRUMP, President of the | ) |
| United States, in his official capacity, *et al.*, | ) BRIEF OF *AMICUS CURIAE* THE |
| | ) AMERICAN CENTER FOR LAW |
| Defendants. | ) AND JUSTICE IN SUPPORT OF |
| _____ | ) DEFENDANTS |

**BRIEF OF *AMICUS CURIAE* THE AMERICAN CENTER FOR LAW AND JUSTICE**
**IN SUPPORT OF DEFENDANTS**

_____

*Not Admitted in This Jurisdiction

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

CORPORATE DISCLOSURE STATEMENT.......................................................... 1

STATEMENT OF INTEREST OF *AMICUS CURIAE*................................................ 1

ARGUMENT ............................................................................................................. 2

I.   PLAINTIFFS FAIL TO MAKE THE CLEAR SHOWING REQUIRED TO OBTAIN THE EXTRAORDINARY AND DRASTIC RELIEF THEY SEEK................................................. 2

II.  DEFENDANTS' UTILIZATION OF §284(B)(7) DRUG-INTERDICTION FUNDS AND TRANSFER OF ADDITIONAL FUNDS PURSUANT TO § 8005 OF THE FY 2019 DOD APPROPRIATIONS ACT IS LAWFUL BECAUSE IT IS AUTHORIZED BY CONGRESS AND DETERMINED TO BE FOR UNFORESEEN MILITARY REQUIREMENTS .......... 3

A.  Plaintiffs and *Amicus Curiae* the U.S. House of Representatives Do Not Challenge the Validity of the President's Emergency Declaration, But Instead Attempt to Enjoin Only Defendants' Utilization of Separately Appropriated Funds to Counter International Criminal Activity and Drug Trafficking Across the Border ............................................. 3

B.  Defendants' § 8005 Transfer of Appropriated Funds to the DOD's § 284 Drug-Interdiction Account, and Utilization of Those Funds to Support the DHS in Securing the Border With Roads, Fences, and Lighting Pursuant to § 284(b)(7), is Lawful ..................................... 5

1.  Plaintiffs' Contention That There is No *Unforeseen* Military Requirement for a Border Wall is Inapposite to Their Challenge of Defendants' § 8005 Transfer and Utilization of § 284(b)(7) Drug-Interdiction Account Funds for Roads, Fences and Lighting ...... 8

2.  Plaintiffs' Contention That a Border Wall is Not a Military Requirement is Inapposite to Their Challenge of Defendants' § 8005 Transfer and Utilization of the DOD's Drug-

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

Interdiction Account Funds for § 284(b)(7) Support by Way of Roads, Fences and Lighting ............................................................................................................ 11

3. Congress Has Expressly Authorized, Not Denied, Defendants' § 8005 Transfer and Utilization of § 284(b)(7) Drug-Interdiction Account Funds for Roads, Fences and Lighting ............................................................................................................ 15

III. ADJUDICATION OF PLAINTIFFS' CLAIMS WOULD REQUIRE THIS COURT TO SUBSTITUTE ITS JUDGMENT IN NATIONAL SECURITY POLICY MATTERS FOR THAT OF THE POLITICAL BRANCHES ........................................................................ 17

CONCLUSION ............................................................................................................ 19

**TABLE OF AUTHORITIES**

**CASES**

*Cardenas v. United States*, 826 F.3d 1164 (9th Cir. 2016)........................................................ 18

*Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp.*, 333 U. S. 103 (1948).................... 6

*Fiallo v. Bell*, 430 U.S. 787 (1977) ...................................................................................... 18

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952) ................................................................. 18

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ......................................................... 6

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) ............................................................ 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................ 2, 6

*Mathews v. Diaz*, 426 U.S. 67 (1976) .................................................................................... 6

*Munaf v. Geren*, 553 U.S. 674 (2008) .................................................................................... 2

*Regan v. Wald*, 468 U. S. 222 (1984) .................................................................................... 6

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ........................................................ 2

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018)................................................................................ 6

*University of Texas v. Camenisch*, 451 U.S. 390 (1981)........................................................... 2

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).......................................................... 2

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) .............................................. 18

*Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076 (2015).................................................. 18

**STATUTES**

10 U.S.C. § 284 ................................................................................................................ *passim*

10 U.S.C. § 284(b)(7) ....................................................................................................... *passim*

10 U.S.C. § 2808 .............................................................................................................. 5, 13

31 U.S.C. § 9705 ................................................................................................................... 4

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

10 U.S.C. § 12302(a) .................................................................................... 5, 13

50 U.S.C. § 1631 .......................................................................................... 5, 13

Department of Defense and Labor, Health and Human Services, and Education Appropriations

    Act, 2019, § 8005, Pub. L. No. 115-245, 132 Stat. 2981 (2018) .................................. *passim*

**OTHER AUTHORITY**

U.S. Const. Article II ........................................................................................... 18

Declaring a Nat'l Emergency Concerning the S. Border of the United States, Pres. Proc. No. 9844,

    84 Fed. Reg. 4949 (Feb. 15, 2019) ..............................................................3, 9, 13

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

## CORPORATE DISCLOSURE STATEMENT

The American Center for Law and Justice is a nonprofit organization that has no parent and issues no stock.

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

*Amicus Curiae* the American Center for Law and Justice (the ACLJ) is an organization dedicated to the defense of constitutional liberties and structures secured by law.  Counsel for the ACLJ have presented oral argument, represented parties, and submitted *amicus* briefs before the United States Supreme Court and numerous state and federal courts around the country in cases concerning the First Amendment, national security, and immigration law, including *FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007); *McConnell v. FEC*, 540 U.S. 93 (2003); *United States v. Texas*, 136 S. Ct. 2271 (2016); and *Trump v. Hawaii*, 138 S. Ct. 2392 (2018).  The ACLJ has been active in advocacy and litigation concerning the need for protecting the Constitution, the First Amendment, the separation of powers, the national security of the United States of America, and the immigration laws in place that protect American citizens from harm. The ACLJ submits this brief on behalf of over 144,000 of its members who support a secure border.

---

[1] *Amicus Curiae* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *Amicus Curiae*, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief.

1

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1

2                                    **ARGUMENT**

3    **I.    PLAINTIFFS FAIL TO MAKE THE CLEAR SHOWING REQUIRED TO
           OBTAIN THE EXTRAORDINARY AND DRASTIC RELIEF THEY SEEK.**
4

5            A preliminary injunction is an "extraordinary and drastic remedy."[2] For such extraordinary

6    relief to be, in fact, extraordinary and drastic, it must not be lightly or routinely granted.  A plaintiff

7    must clearly show "that he is likely to succeed on the merits, that he is likely to suffer irreparable

8    harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

9    injunction is in the public interest."[3]  A clear showing as to each and every element of this standard

10   is, admittedly, a heavy burden. But that is precisely the way it is meant to be, as a preliminary

11   injunction provides extraordinary relief without the benefit of a full trial or merits hearing.[4]

12           In the realm of national security decisions, like those made by the President here and

13   reflected in the challenged executive actions, judicial intervention without a full trial or merits

14   hearing can be dangerous.  At the very least, a plaintiff seeking such an extraordinary and drastic

15   remedy must satisfy its heavy burden by providing convincing and extensive legal analysis, which

16   these Plaintiffs fail to do.[5] Mere dislike for a President's policy, or regret that Congress has long

---

[2] *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

[3] *Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

[4] *See University of Texas v. Camenisch*, 451 U.S. 390, 396 (1981) ("[W]here a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy.").

[5] Among other defects in Plaintiffs' case, Plaintiffs' likelihood of success on the issue of standing is anything but clear.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992) (concerning standing; explaining that certain matters are "the function of Congress and the Chief Executive" and not the federal courts).

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1    recognized the President's powers to declare and address a national emergency, cannot be enough

2    – especially when a plaintiff asks a Court to bar a President's lawful actions concerning duly

3    appropriated funds *expressly taken with actual congressional assent in the interest of national*

4    *security.*

5

6    **II.    DEFENDANTS' UTILIZATION OF §284(b)(7) DRUG-INTERDICTION FUNDS
7           AND TRANSFER OF ADDITIONAL FUNDS PURSUANT TO § 8005 OF THE FY
           2019 DOD APPROPRIATIONS ACT IS LAWFUL BECAUSE IT IS AUTHORIZED
           BY CONGRESS AND DETERMINED TO BE FOR UNFORESEEN MILITARY
           REQUIREMENTS.**

8

9           **A.    Plaintiffs and *Amicus Curiae* the U.S. House of Representatives Do Not
10                 Challenge the Validity of the President's Emergency Declaration, But
                  Instead Attempt to Enjoin Only Defendants' Utilization of Separately
11                Appropriated Funds to Counter International Criminal Activity and Drug**

12           On February 15, 2019, the President of the United States proclaimed the existence of a

13    national emergency under the National Emergencies Act necessitating, among other actions, the

14    construction of a wall across the southern border.[6] It is indisputable and undisputed that both

15    Congress and the President followed the executive and legislative procedure set forth by Congress

16    itself in the National Emergencies Act to provide a political check on the President's power

17    concerning national emergencies.[7] It is equally indisputable and undisputed that, consistent with

18    that procedure, Congress was unwilling to terminate the President's Emergency Declaration.

---

[6] Declaring a Nat'l Emergency Concerning the S. Border of the United States, Pres. Proc. No. 9844, 84 Fed. Reg. 4949 (Feb. 15, 2019) (the "Emergency Declaration").

[7] While both Chambers of Congress voted on a House Joint Resolution, H.J.Res.46, to terminate the President's Emergency Declaration, they failed to do so with enough votes to override a Presidential veto.  On March 15, 2019, the President in fact vetoed the Joint Resolution.  Veto Message to the House of Representatives for H.J. Res. 46 (Mar. 15, 2019), https://www.whitehouse.gov/briefings-statements/veto-message-house-representatives-h-j-res-46/ ("I am returning herewith without my approval H.J. Res. 46, a joint resolution that would terminate the national emergency I declared regarding the crisis on our southern border in

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1    No doubt fully aware of these facts, and in spite of all the political bluster, hyperbole, and

2    threats of legal action, Plaintiffs and *Amicus Curiae* U.S. House of Representatives, tellingly, do

3    not challenge the validity of the Emergency Declaration. Instead, they challenge Defendants'

4    utilization of 10 U.S.C. § 284(b)(7) drug-interdiction account appropriation funds – and certain

5    funds to be transferred to that account pursuant to § 8005 of the Department of Defense and Labor,

6    Health and Human Services, and Education Appropriations Act (FY 2019 DOD Appropriations

7    Act)[8] – to support the construction of roads, fences, and lighting at certain locations Defendants

8    have determined to be necessary in light of national security interests.[9]

9    To be sure, the § 284 drug-interdiction account funds (and the § 8005 transfer of additional

10   funds to that account) are not specifically dependent upon the President's Emergency

11   Declaration.[10]  But, Defendants' utilization of those funds does not occur in a vacuum and

---

Proclamation 9844 on February 15, 2019, pursuant to the National Emergencies Act."). And, on March 26, 2019, the U.S. House of Representatives, by a vote of 248 to 181, falling well short of the constitutionally required two-thirds threshold, failed to override the President's veto.

[8] Pub. L. No. 115–245, 132 Stat. 2981 (2018).

[9] Plaintiffs also challenge *pro forma* Defendants' planned transfer of $601 million from the Treasury Forfeiture Fund (TFF) to the Department of Homeland Security (DHS) pursuant to 31 U.S.C. § 9705. Plaintiffs' Motion exclusively for projects in the Rio Grande Valley. After describing the TFF for approximately four pages (Doc. # 59, pp. 6–7, 11–12), Plaintiffs devote less than two pages to its legal argument as to why they believe Defendants *lack authority* to utilize these funds, separate and apart from their misguided APA claim (*id.* at 25–26). This argument is so perfunctory that *Amicus Curiae* will not address it in this brief. Plaintiffs also purport to make an Administrative Procedures Act (APA) argument (*id.* at 26) that *Amicus Curiae* leaves for Defendants to refute directly, although *Amicus Curiae* notes Plaintiffs' APA arguments suffer from the same flawed legal analysis that belies their § 284 drug-interdiction account and § 8005 transfer arguments which *Amicus Curiae* does address herein – in addition to a flawed application of the APA itself.

[10] *See* Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authority in Support Thereof (Doc. # 59, p.6) ("Plaintiffs' Motion") ("The diversions at issue in this motion do not depend on invocation of the National Emergencies Act in order to take effect."); Brief of the U.S. House of Representatives as *Amicus Curiae* (Doc. # 73, p. 8) ("U.S. House Amicus Brief") ("Authority under this section does not depend on the President declaring a national emergency.").

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   obviously has ripple effects, some foreseen and some unforeseen.[11] The unchallenged Emergency

2   Declaration and the national security and humanitarian crisis leading to the issuance of that

3   Emergency Declaration, while not controlling, are still informative and relevant to a proper

4   understanding of the actions of Defendants that Plaintiffs do challenge.

5
6       **B.    Defendants' § 8005 Transfer of Appropriated Funds to the DOD's § 284
               Drug-Interdiction Account, and Utilization of Those Funds to Support the
               DHS in Securing the Border With Roads, Fences, and Lighting Pursuant to
7              § 284(b)(7), is Lawful.**

8       Plaintiffs contend that Defendants' transfer of § 8005 funds to the § 284 Department of

9   Defense (DOD) drug-interdiction account is improper because, in their view: (1) there is no

10  unforeseen military requirement for a border wall; (2) a border wall is not a military requirement;

11  and (3) the "proposed wall is an 'item for which funds [have been] requested [and] has been denied

12  by the Congress.'"[12] Plaintiffs are wrong on all three propositions, because the § 8005 transfer is

13  not for a border wall at all. Instead, according to Plaintiffs' own exhibits, the transfer is for roads,

14  fences and lighting – all of which Congress has already expressly authorized, not denied,

15  Defendants to transfer and utilize upon an Executive Branch determination that those items are a

16  higher priority based on unforeseen military requirement.[13]

17      It is also not the Plaintiffs' job to determine whether or not there is an emergency on the

18  southern border. Defendants have made this determination based on the legitimate criteria they

---

[11] Consistent with 50 U.S.C. § 1631, the President specifically cited two statutes, 10 U.S.C. § 2808 (concerning authority to utilize the DOD for military construction projects) and 10 U.S.C. § 12302(a) (concerning authority to order reserve members to active duty) as a source of law available to him when he determines military action is necessary to resolve the emergency. Among others, these unchallenged determinations made by the President, and expressly authorized by Congress, demonstrate the propriety of DOD involvement to assuage the border emergency.

[12] Plaintiffs' Motion (Doc. #59, p. 23–24) (quoting FY 2019 DOD Appropriations Act, § 8005).

[13] FY 2019 DOD Appropriations Act, § 8005.

5

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   have reviewed and in accordance with what they view as necessary to serve vital national security

2   interests. At all times they have proceeded under their duly authorized powers.[14] That is to say,

3   from an objective legal perspective, there is an undisputed national emergency, but that has nothing

4   directly to do with these funds. Dealing with this undisputed emergency has engendered

5   unforeseen incidental costs, including such unforeseen military requirements as additional roads

6   and lighting, and Congress has explicitly allowed the Executive Branch to transfer these funds for

7   just such an unforeseen military requirement. Pursuant to well-established jurisprudential and

8   separation of powers principles, the courts are not properly situated to intervene and substitute

9   policy judgments for that of the political branches – especially when issues of national security,

10  foreign affairs, and immigration are involved.[15]

11         Plaintiffs and *Amicus* U.S. House of Representatives also dislike Defendants' reliance on

12  10 U.S.C. § 284(b)(7) to access resources from the DOD's drug-interdiction account. That section

---

[14] "[T]he Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security and foreign affairs.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2421–22 (2018) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–34 (2010)).

[15] *See Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976) ("Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution. The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization."); *Trump v. Hawaii*, 138 S. Ct. 2392, 2419–20 (2018) (quoting *Mathews*, 426 U.S. at 81-82; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992) (rejecting plaintiffs' incorrect position that "would enable the courts, with the permission of Congress, to assume a position of authority over the governmental acts of another and co-equal department, to become virtually continuing monitors of the wisdom and soundness of Executive action." (internal quotations and citations omitted)); *see also Trump v. Hawaii*, 138 S. Ct. at 2421 ("But we cannot substitute  our own assessment for the Executive's predictive judgments on such matters," *i.e.*, whether an executive branch policy was wise, effective or does little to serve national security interests, "all of which 'are delicate, complex, and involve large elements of prophecy.'" (quoting *Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948))); *Regan v. Wald*, 468 U. S. 222, 242–243 (1984) (declining invitation to conduct an "independent foreign policy analysis").

1    authorizes the Secretary of Defense to support other federal agencies in the "[c]onstruction of roads

2    and fences and installation of lighting to block drug smuggling corridors across international

3    boundaries of the United States."[16] And they especially dislike Defendants' reliance on the DOD's

4    transfer authority found in § 8005 of the FY 2019 DOD Appropriations Act, to "augment existing

5    counterdrug funds" available under section 284(b)(7).[17]

6            Plaintiffs contend that Defendants lack the statutory authority under § 8005 to transfer

7    funds to DOD's drug-interdiction account to build a border wall because § 8005 provides that

8    "[t]hat such authority to transfer may not be used unless for higher priority items, based on

9    unforeseen military requirements, than those for which originally appropriated and in no case

10   where the item for which funds are requested has been denied by the Congress."[18] According to

11   Plaintiffs' flawed three-fold theory: (1) there is no unforeseen military requirement for a border

12   wall; (2) a border wall is not a military requirement; and (3) the "proposed wall is an 'item for

13   which funds [have been] requested [and] has been denied by the Congress.'"[19] All three arguments

14   are inherently flawed for the same reasons noted above:  The § 8005 transfer is, according to

15   Plaintiffs' own exhibits, *not for a border wall*, but instead for purposes specifically authorized by

16   10 U.S.C. § 284(b)(7): "Construction of roads and fences and installation of lighting to block drug

17   smuggling corridors across international boundaries of the United States."[20]

---

[16] 10 U.S.C. § 284(b)(7); *see* Plaintiffs' Motion (Doc. # 59, p. 7).

[17] Plaintiffs' Motion (Doc. # 59, p. 7).

[18] *Id.* at  22-23 (quoting FY 2019 DOD Appropriations Act, § 8005 (2018)).

[19] *Id.* at 23-24 (quoting FY 2019 DOD Appropriations Act, § 8005).

[20] *See id.* at 8 (quoting RJN Ex. 33) ("DOD approved the transfer in response to a February 25 request by DHS for DOD to '*assist with the construction of fences[,] roads, and lighting' under § 284(b)(7) to 'block drug-smuggling corridors across the international boundary between the United States and Mexico'* in certain areas identified by DHS" (emphasis added)); *id.* (citing RJN Ex. 34) ("Defendant Shanahan notified Defendant DHS Secretary Nielsen that he authorized the Commander of the U.S. Army Corps of Engineers to utilize the $1 billion being transferred to coordinate with DHS *to assist in the construction of 18-foot-high-pedestrian fencing, the*

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

The common denominator in Plaintiffs three arguments, *i.e.*, that these funds are being used to build a border wall, is a false premise. Once the correct premise, *i.e.*, that these funds are being used for the construction of roads, fences and lighting to counter drug activity – is substituted in its place, all three arguments easily fail.  They fail for additional reasons as well.

       **1.**    **Plaintiffs' Contention That There is No *Unforeseen* Military Requirement for a Border Wall is Inapposite to Their Challenge of Defendants' § 8005 Transfer and Utilization of § 284(b)(7) Drug-Interdiction Account Funds for Roads, Fences and Lighting.**

Plaintiffs contend "there is no '*unforeseen* military requirement.' The president's desire for a border wall was certainly 'foreseen.'"[21] But, unfortunately for Plaintiffs, it is not "[t]he president's desire for a border wall" to which § 8005's "unforeseen" restriction applies. Instead, based on Plaintiffs' limited challenge in this case, the "unforeseen" restriction applies to roads, fences, and lighting to be constructed by the DOD to support other agencies in countering international criminal and drug trafficking activity at the southern border pursuant to 10 U.S.C. § 284(b)(7). That is explicitly what the § 8005 funds are being transferred to accomplish.

As the only support for their argument, Plaintiffs contend that, because the President "directed DOD to provide support and resources to the southern border in an April 4, 2018 memorandum, RJN Ex. 27, nearly six months before enactment of the FY 2019 DOD Appropriations Act, and because the President and DOD "fail[ed]" to "request DOD funding from Congress to construct a border wall as part of the FY 2019 DOD Appropriations Act," this

---

*construction and improvement of roads, and the installation of lighting* in the Yuma Sector Projects 1 and 2 (on the southwest border of Arizona) and El Paso Sector Project 1 (on the southwest border of New Mexico) identified in DHS's February 25 request." (emphasis added)).
[21] Plaintiffs' Motion (Doc # 59, p. 23) (emphasis supplied in Plaintiffs' Motion) (quoting FY 2019 DOD Appropriations Act, § 8005).

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   "strongly undercuts any contention that a border wall is an *unforeseen* military requirement."[22]

2   Again, the § 8005 transfer at issue is for roads, fences, and lighting, not a border wall. Plaintiffs'

3   false premise seems to permeate every argument they make. Plaintiffs' fallacious arguments on

4   this point fail for this reason alone, but further analysis reveals additional major flaws. The

5   President and other Defendants have identified an unforeseen military requirement *for DOD*

6   *support*. It is the President and other Defendants who, within the statutory framework enacted by

7   Congress, gets to make that call, not Plaintiffs.[23]

---

[22] *Id.* at 23 (emphasis supplied in Plaintiffs' Motion) (citing FY 2019 DOD Appropriations Act).
[23] The President also identified the unforeseen military requirement for DOD support by the determinations contained *within* his declaration:

> The southern border is a major entry point for criminals, gang members, and illicit narcotics. The problem of large-scale unlawful migration through the southern border is long-standing, and despite the executive branch's exercise of existing statutory authorities, *the situation has worsened in certain respects in recent years*. In particular, recent years have seen sharp increases in the number of family units entering and seeking entry to the United States and an inability to provide detention space for many of these aliens while their removal proceedings are pending. . . . In response to the directive in my April 4, 2018, memorandum and subsequent requests for support by the Secretary of Homeland Security, the Department of Defense has provided support and resources to the Department of Homeland Security at the southern border. *Because of the gravity of the current emergency situation, it is necessary for the Armed Forces to provide additional support to address the crisis*.

Emergency Declaration, 84 Fed. Reg. 4949 (Feb. 15, 2019) (emphasis added).

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1      Moreover, the  DHS also identified the unforeseen nature of its need by and in its request

2  to the DOD for support.[24] The DOD did so by and in its notifications to the DHS[25] and to

3  Congress[26] concerning its §284(b)(7) support for DHS and § 8005 funds transfer in furtherance of

4  that support.

---

[24] *See* Plaintiffs' Motion (Doc. # 59, p. 8) ("DOD approved the transfer in response to a February 25 request by DHS for DOD to 'assist with the construction of fences[,] roads, and lighting' under § 284(b)(7) to 'block drug-smuggling corridors across the international boundary between the United States and Mexico' in certain areas identified by DHS." (quoting RJN Ex. 33)); RJN Ex. 33, p. 1 ("Within the Project Areas, DHS is experiencing large numbers of individuals and narcotics being smuggled into the country illegally."); *id.* at 2 ("The Project Areas identified are adjacent to some of the most densely populated metropolitan areas of Mexico and are also home to some of the strongest and most violent drug cartels in the world. Deterring and preventing illegal cross-border activity will help stem the flow of illegal narcotics and entries in these areas. Similarly, the improved ability to impede, deny, and be mobile within the Project Areas creates a safer operational environment for law enforcement."); *id.* ("To support DHS's action under Section 102 of IIRIRA, DHS is requesting that DoD, pursuant to its authority under 10 U.S.C. § 284(b)(7), assist with the construction of fences roads, and lighting within the Project Areas to block drug-smuggling corridors across the international boundary between the United States and Mexico."); *id.* at 4 (With respect to the Yuma Sector, "The replacement of *ineffective pedestrian fencing in this area is necessary because the older, wire mesh design is easily breached and has been damaged to the extent that it is ineffective.* Additionally, this area is notorious for border violence and narcotics smuggling. Furthermore, while the deployment of vehicle barrier in the Yuma Sector initially curtailed the volume of illegal cross-border vehicular traffic, *transnational criminal organizations quickly adapted their tactics* switching to foot traffic, cutting the barrier, or simply driving over it to smuggle their illicit cargo into the United States. Thus, in order to respond to these changes in tactics, DHS now requires pedestrian fencing." (emphasis added)).

[25] *See* Plaintiffs' Motion (Doc. # 59, p. 8) (Citing DOD's statutory authority under 10 U.S.C. § 284(b)(7), "[i]n the March 25, 2019 response to DHS's request, Defendant Shanahan notified Defendant DHS Secretary Nielsen that he authorized the Commander of the U.S. Army Corps of Engineers to utilize the $1 billion being transferred to coordinate with DHS to assist in the construction of 18-foot-high-pedestrian fencing, the construction and improvement of roads, and the installation of lighting in the Yuma Sector Projects 1 and 2 (on the southwest border of Arizona) and El Paso Sector Project 1 (on the southwest border of New Mexico) identified in DHS's February 25 request." (quoting RJN Ex. 34)).

[26] *See* Plaintiffs' Motion (Doc. # 59, p. 8) ("On March 25, 2019, Defendant DOD Acting Secretary Shanahan apprised Congress that pursuant to § 8005, DOD was transferring $1 billion from DOD's Military Personnel and Reserve Personnel account to DOD's drug-interdiction account to be used for barrier fencing." (citing RJN Ex. 32)); RJN Ex. 32 ("This reprogramming action provides funding in support of higher priority items, based on unforeseen military requirements, than those for which originally appropriated; and is determined to be necessary in the national interest."); *id.* ("Funds are required to provide support for counter-drug activities of the Department of Homeland

10

1    The bottom line is that the Plaintiffs' unforeseen military requirement for a border wall is

2    a red herring. At the same time, the requirement for roads, fences, and lighting constructed by the

3    DOD to counter international criminal activity and drug trafficking at our Nation's southern border

4    was determined to be, and at all times correctly procedurally identified as, unforeseen by

5    Defendants. The § 8005 "unforeseen" restriction, therefore, does not bar Defendants' fund

6    transfers into DOD's drug-interdiction account for § 284(b)(7) support.

7
     **2.    Plaintiffs' Contention That a Border Wall is Not a Military**
8    **Requirement is Inapposite to Their Challenge of Defendants' § 8005**
     **Transfer and Utilization of the DOD's Drug-Interdiction Account**
9    **Funds for § 284(b)(7) Support by Way of Roads, Fences and Lighting.**

10    Plaintiffs contend "a border wall" is not a "military requirement."[27] This argument fails to

11    entitle Plaintiffs to the requested relief for several reasons. First, as previously noted, Defendants'

12    § 8005 transfer into DOD's drug-interdiction account is not for a border wall, but instead, so that

13    the Secretary of Defense may support other federal agencies in the "[c]onstruction of roads and

14    fences and installation of lighting to block drug smuggling corridors across international

15    boundaries of the United States" – all as expressly authorized by § 284(b)(7).[28] This reality is

16    amply demonstrated by Plaintiffs' own Motion and record.

17    According to Plaintiffs, "DOD approved the transfer in response to a February 25 request

18    by DHS for DOD to 'assist with the construction of fences[,] roads, and lighting' under § 284(b)(7)

---

Security (DHS). DHS has identified areas along the southern border of the United States that are
being used by individuals, groups, and transnational criminal organizations as drug smuggling
corridors, and determined that the construction of additional physical barriers and roads in the
vicinity of the United States border is necessary in order to impede and deny drug smuggling
activities. DHS requests DoD assistance in the execution of projects to replace existing vehicle
barriers or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install
lighting.").

[27] Plaintiffs' Motion (Doc # 59, p. 23) (quoting FY 2019 DOD Appropriations Act, § 8005).

[28] 10 U.S.C. § 284(b)(7).

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

to 'block drug-smuggling corridors across the international boundary between the United States and Mexico' in certain areas identified by DHS."[29] And, "In the March 25, 2019 response to DHS's request, Defendant Shanahan notified Defendant DHS Secretary Nielsen that he authorized the Commander of the U.S. Army Corps of Engineers to utilize the $1 billion being transferred to coordinate with DHS to assist in the construction" *not of a border wall*, but "of 18-foot-high-pedestrian fencing, the construction and improvement of roads, and the installation of lighting in the Yuma Sector Projects 1 and 2 (on the southwest border of Arizona) and El Paso Sector Project 1 (on the southwest border of New Mexico) identified in DHS's February 25 request."[30]

Also "[o]n March 25, 2019, Defendant [] Acting Secretary [of Defense] Shanahan apprised Congress that pursuant to § 8005, DOD was transferring $1 billion from DOD's Military Personnel and Reserve Personnel account to DOD's drug-interdiction account to be used for barrier fencing,"[31] roads, and lighting.[32] As set forth in that same DOD notification, "[t]his reprogramming action provides funding in support of higher priority items, based on unforeseen military requirements, than those for which originally appropriated; and is determined to be necessary in the national interest."[33] Further, DOD notified Congress that (1) "[f]unds are required to provide support for counter-drug activities of the Department of Homeland Security (DHS)"; (2) "DHS has identified areas along the southern border of the United States that are being used by individuals, groups, and transnational criminal organizations as drug smuggling corridors"; (3) DHS "determined that the construction of additional physical barriers and roads in the vicinity of the United States border is necessary in order to impede and deny drug smuggling activities"; and

[29] Plaintiffs' Motion (Doc. #59, p. 8) (quoting RJN Ex. 33).
[30] *Id.* (quoting RJN Ex. 34).
[31] *Id.* (citing RJN Ex. 32).
[32] Plaintiffs' RJN Ex. 32.
[33] *Id.*

12

1   (4) "DHS requests DoD assistance in the execution of projects to replace existing vehicle barriers

2   or dilapidated pedestrian fencing with new pedestrian fencing, construct roads, and install

3   lighting."[34]

4         Accordingly, whether "*a border wall*" is a "military requirement" is not even before this

5   Court to decide.[35] Instead, based on Plaintiffs' challenge here, only whether DOD support in the

6   form of roads, fences, and lighting, is a military requirement.

7         Second, even if Plaintiffs' false question were properly before this Court, the President has

8   already determined that a national emergency exists requiring the use of the U.S. military and other

9   DOD assistance to DHS in securing portions of the southern border. According to the President of

10   the United States:

11   > The current situation at the southern border presents a border security and
12   > humanitarian crisis that threatens core national security interests and constitutes a
13   > national emergency. The southern border is a major entry point for criminals, gang
14   > members, and illicit narcotics. The problem of large-scale unlawful migration
15   > through the southern border is long-standing, and despite the executive branch's
16   > exercise of existing statutory authorities, the situation has worsened in certain
17   > respects in recent years. . . . In response to the directive in my April 4, 2018,
18   > memorandum and subsequent requests for support by the Secretary of Homeland
19   > Security, the Department of Defense has provided support and resources to the
      > Department of Homeland Security at the southern border. *Because of the gravity of
      > the current emergency situation, it is necessary for the Armed Forces to provide
      > additional support to address the crisis. . . . I hereby declare that this emergency
      > requires use of the Armed Forces* and, in accordance with section 301 of the
      > National Emergencies Act (50 U.S.C. 1631), that the construction authority
      > provided in section 2808 of title 10, United States Code, is invoked and made
      > available, according to its terms, to the Secretary of Defense and, at the discretion
      > of the Secretary of Defense, to the Secretaries of the military departments.[36]

---

[34] *Id.*

[35] Nor should it be. Within the American constitutional structure, courts simply ought not make this type of judgment.

[36] Declaring a Nat'l Emergency Concerning the S. Border of the United States, Pres. Proc. No. 9844, 84 Fed. Reg. 4949 (Feb. 15, 2019) (emphasis added). The President also specifically invoked 10 U.S.C. § 12302, regarding the DOD, in his Emergency Declaration.

1    Against this backdrop, Plaintiffs' assertion that a border wall is not a military requirement is,

2    objectively, wrong, and their contention that "[t]he protection of the border is the job of DHS, not

3    DOD"[37] fails to salvage it.

4         From the National Emergencies Act and related statutes authorizing DOD military support,

5    to the § 284(b)(7) DOD drug-interdiction account and § 8005 transfer authority, Congress has

6    indisputably both recognized the prospect of and created a statutory structure wherein the DOD

7    provides support to the DHS. In any of those circumstances, supporting the DHS becomes the

8    DOD's "job" – whether building a wall or merely roads, fences, and lighting.

9         To illustrate: In his Emergency Declaration, *declared consistent with a congressional act*,

10   the President recognized the need for the DOD to support the DHS and directed the required

11   support *pursuant to specific statutes enacted by Congress*. And, while not directly tied to or

12   dependent upon the President's powers asserted and recognized by the National Emergencies Act,

13   *Congress has expressly authorized funds for the Secretary of Defense to support other federal*

14   *agencies, including the DHS*, in the "[c]onstruction of roads and fences and installation of lighting

15   to block drug smuggling corridors across international boundaries of the United States"[38]; and

16   granted the authority to transfer funds via § 8005 of the FY 2019 DOD Appropriations Act into

17   the DOD's § 284 drug-interdiction account. Hence, Congress has expressly created a structure

18   wherein the DOD can and does support the DHS.[39] Plaintiffs' assertion that somehow the DOD is

19   not allowed to help the DHS protect the border is as ridiculous as it is flawed.

---

[37] Plaintiffs' Motion (Doc. # 59, p. 23).

[38] 10 U.S.C. § 284(b)(7); *see* Plaintiffs' Motion (Doc. # 59, p. 7).

[39] Further, the §284(b)(7) funds and § 8005 transfer mechanism challenged by Plaintiffs were authorized by Congress irrespective of a National Emergencies Act declaration. In other words, the President could utilize this funding mechanism without having to first declare a national emergency. That the President has taken the separate and further step of declaring a national emergency *evidences the military requirement* for the § 8005 transfer.

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1    But again, Plaintiffs' Motion here only challenges Defendants' § 8005 transfer of

2   approximately $1 billion to DOD's § 284(b) drug-interdiction account, and that transfer is for

3   roads, fences and lighting, *not a border wall*. Plaintiffs' argument that a border wall is not a

4   military requirement is meritless.

5          **3.    Congress Has Expressly Authorized, Not Denied, Defendants' § 8005
                    Transfer and Utilization of § 284(b)(7) Drug-Interdiction Account
6                   Funds for Roads, Fences and Lighting.**

7          To support their flawed assertion that border wall funding has allegedly been denied by

8   Congress, Plaintiffs point to congressional committee letters signed only by chairmen of the

9   partisan majority of one chamber of Congress: "On March 26, 2019, the House Armed Services

10  Committee informed DOD that the Committee 'does not approve' of the request to transfer $1

11  billion 'to construct additional physical barriers and roads or install lighting in the vicinity of the

12  United States Border.'"[40] And, "[o]n March 26, 2019, the House Defense Appropriations

13  Subcommittee similarly denied the request."[41] Plaintiffs fail to explain, nor could they possibly,

14  how these partisan committee letters could in any way constitute, substitute for, or express the

15  voice of Congress *vis-à-vis* a majority vote on the floor of both chambers as is the law; that failure

16  alone reeks of partisan gamesmanship.

17         Importantly, Plaintiffs' assertion also fails because, even according to Chairman Adam

18  Schiff's own denial letter, the § 8005 transfer at issue is expressly purposed "to construct additional

19  physical barriers and roads or install lighting in the vicinity of the United States Border"[42] – *i.e.*

20  (and it cannot be stressed enough) *not* a "border wall" as Plaintiffs attempt to now mischaracterize

21  it. Hence, even if partisan committee denial letters of one chamber could constitute a congressional

---

[40] Plaintiffs' Motion (Doc. #59, p. 8) (quoting RJN Ex. 35).
[41] *Id.* (quoting RJN Ex. 36).
[42] *Id.* (quoting RJN Ex. 35).

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   denial, the House Armed Services Committee chairman denied the wrong thing. Congress did not

2   deny Defendants' ability to transfer § 8005 funds to DOD's drug-interdiction account for the

3   Secretary of Defense to support other federal agencies in the "[c]onstruction of roads and fences

4   and installation of lighting to block drug smuggling corridors across international boundaries of

5   the United States."[43] And not only has that authority *not been denied* by Congress, to the contrary,

6   *it has been expressly granted* via 10 U.S.C. § 284(b)(7).

7          This same underlying flaw defeats Plaintiffs' other arguments on this particular point. For

8   example, in another attempt to support their flawed assertion, Plaintiffs argue that in January of

9   2019: "the OMB requested $5.7 billion from Congress to 'fund construction of a total of

10  approximately 234 miles of new physical barrier [on the southwest border].' Congress, however,

11  denied OMB's request, instead, appropriating only $1.375 billion to construct a limited amount of

12  barrier fencing in the Rio Grande Valley."[44] This is a classic case of apples and oranges. Congress'

13  denial of that particular OMB request for $5.7 billion to fund construction of a total of

14  approximately 234 miles of new physical barrier on the southwest border is immaterial to

15  Defendants' transfer via § 8005 of the FY 2019 DOD Appropriations Act of only approximately

16  $1 billion to DOD's drug-interdiction account in order for the Secretary of Defense to support

17  other federal agencies in the "[c]onstruction of roads and fences and installation of lighting to

18  block drug smuggling corridors across international boundaries of the United States" – which is

19  expressly authorized by 10 U.S.C. § 284(b)(7).[45] If it were not so brazen, Plaintiffs' attempt to

---

[43] 10 U.S.C. § 284(b)(7); *see* Plaintiffs' Motion (Doc. # 59, p. 7).
[44] Plaintiffs' Motion (Doc. # 59, p. 24) (quoting RJN Ex. 25; citing 2019 Consolidated Appropriations Act, §§ 230–32, 133 Stat. at 28–29).
[45] 10 U.S.C. § 284(b)(7). In fact, not only is Congress' denial of border wall funding cited by Plaintiffs immaterial, it actually highlights two important things. First, it reveals what an actual congressional denial really is. And second, it underscores that Congress has only denied *a portion* of a particularized request for funds *for a border wall* – and *not* the § 8005 transfer into DOD's §

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   construe two different things as the same would be humorous. Regardless it remains without merit

2   and must fail.

3          In sum, Congress has expressly authorized the transfer and use of appropriated funds to do

4   precisely what Defendants are transferring the $1 billion to do. This is no unconstitutional

5   usurpation. To the contrary, Defendants' transfer is both expressly authorized and lawful. The only

6   unconstitutional usurpation would be for a court, out of dislike for particular policy, to invade the

7   province of the political branches, take sides, and change the rules in the middle of the game by

8   pretending that some unhappy members of Congress could somehow undo actual congressional

9   actions. Courts should be especially reluctant to interfere where, as here, the challenged actions

10  are taken against the backdrop of what the President of the United States has declared to be a

11  national emergency.

12  **III.   ADJUDICATION OF PLAINTIFFS' CLAIMS WOULD REQUIRE THIS COURT
13         TO SUBSTITUTE ITS JUDGMENT IN NATIONAL SECURITY POLICY
           MATTERS FOR THAT OF THE POLITICAL BRANCHES.**

14         Congress has clearly authorized the use of § 284 DOD drug-interdiction account funds to

15  support the DHS in the construction of roads, fences, and lighting on our nation's international

16  border. Congress has also clearly authorized the DOD to transfer funds into that account via §

17  8005. Defendants have lawfully utilized those funds, and have taken no *ultra vires* action. All that

18  is left upon which this Court could pass judgment, then, is the favorability and/or wisdom of a

19  policy requiring it to delve into national security matters reserved by the U.S. Constitution for the

20  political branches.

21

_____

284(b)(7) drug-interdiction account for roads, fences and lighting being implemented by
Defendants.

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1

2          The United States Constitution grants to the President inherent foreign affairs and national

3   security powers. [46]   And, as demonstrated *supra*, he has utilized those powers within a

4   congressionally enacted and appropriated structure. Where, as here, a President's executive action

5   is based on this convergence of authority, the President's "authority is at its maximum, for it

6   includes all that he possesses in his own right plus all that Congress can delegate."[47]

7          Moreover, the Constitution "is not a suicide pact,"[48] and the first responsibility of the

8   United States government is national defense and security. The President's Emergency Declaration

9   and Defendants' utilization of § 284 DOD drug-interdiction account funds and § 8005 transfer of

10  additional funds into that account were based on precisely that responsibility. The Defendants'

11  actions challenged by Plaintiffs are closely tethered to discretionary powers vested in the Executive

12  Branch by the Constitution *and authorized by Congress*, and clearly fall within the President's

13  well-established constitutional and statutory authority.

14         It is undeniable that the admission of, or refusal to admit, any refugee or alien is a sovereign

15  act of the United States.  "The Supreme Court has 'long recognized the power to expel or exclude

16  aliens as a fundamental sovereign attribute exercised by the Government's political departments

17  largely immune from judicial control.'"[49] The Preliminary Injunction Plaintiffs seek would

18  contravene the President's constitutional and statutory authority to protect the border as well as

---

[46] U.S. Const. Article II; *Harisiades v. Shaughnessy*, 342 U.S. 580, 588 (1952) (recognizing that immigration control is an integral part of Article II authorities "in regard to the conduct of foreign relations [and] the war power").
[47] *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2083–84 (2015); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635–36 (1952).
[48] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 160 (1963).
[49] *Cardenas v. United States*, 826 F.3d 1164, 1169 (9th Cir. 2016) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).

18

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   the considered judgment of Congress that the President should have funds available to do so.  The

2   Defendants' § 8005 transfer does precisely that which Congress vested, and funded, the President

3   and other Defendants with the power to do.

4                                           **CONCLUSION**

5          The bottom line is that Congress *did* appropriate the funds being utilized by the Defendants

6   to secure portions of the Southern Border, and authorized the transfer of additional funds for that

7   purpose.[50] Plaintiffs' own record shows that Defendants are utilizing and transferring appropriated

8   funds for the right purposes and within the constraints imposed by Congress. Court intervention –

9   especially in the form of preliminary injunctive relief – attempting to give some unhappy members

10  of Congress and certain of their constituents the result that the actual representative body of

11  Congress is politically unwilling or unable to achieve within the constitutional structure would

12  violate separation of powers principles and improperly invade the provinces of the political

13  branches.

14         Even if Plaintiffs succeeded in overcoming the multiple legal and factual flaws underlying

15  their case, *e.g.*, establishing standing, which Plaintiffs are not, only the question of whether the

16  President had the authority to use appropriated funds for these particular non-border wall purposes

17  can properly be before this Court for review. The favorability and/or wisdom of the President's

18  national security policy decisions is not. For these reasons and others, *Amicus Curiae* respectfully

19  urges this Court to deny Plaintiffs' Motion for a Preliminary Injunction.

20

21

22

---

[50] 10 U.S.C. § 284(b)(7); FY 2019 DOD Appropriations Act, § 8005.

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1   Dated:  May 2, 2019.                          Respectfully submitted,

2   JAY ALAN SEKULOW (N.D. Cal. # 496335)          ROBERT H. TYLER, CA Bar No. 179572
        *Counsel of Record*                        NADA N. HIGUERA, CA Bar No. 299819
3   STUART J. ROTH*                                JAMES A. LONG, CA Bar No. 273735
    ANDREW EKONOMOU*                               Tyler & Bursch, LLP
4   JORDAN SEKULOW*                                25026 Las Brisas Road, Suite 110
    HARRY G. HUTCHISON*                            Murrieta, California 92562
5   MILES L. TERRY*                                Tel: 951-600-2733
    MARK GOLDFEDER*                                Fax: 951-600-4996
6                                                  rtyler@tylerbursch.com
    /s/ Benjamin P. Sisney                         nhiguera@tylerbursch.com
7   BENJAMIN P. SISNEY (DC Bar # 1044721)          jlong@tylerbursch.com
    (*Pro Hac Vice* Application Forthcoming)        *Counsel for Amicus Curiae,*
8   AMERICAN CENTER FOR LAW AND JUSTICE                *The American Center for Law & Justice*
    201 Maryland Avenue, NE
9   Washington, DC 20002
    Telephone: (202) 546-8890
10  Facsimile: (202) 546-9309
    Email: sekulow@aclj.org
11  *Counsel for Amicus Curiae*

12

13

14

15

16

17

18

19

20

21

22   _____

23   *Not Admitted in This Jurisdiction.

                                        20

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG

1

## <u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on May 2, 2019, I caused a true and correct copy of the foregoing

3  Motion of the American Center for Law and Justice for Leave to File its *Amicus Curiae* Brief and

4  the proposed Brief of *Amicus Curiae* to be filed via the U.S. District Court for the Northern District

5  of California's CM/ECF system, which I understand caused service on all registered parties and

6  counsel of record.

7  Dated:   May 2, 2019.                    Respectfully submitted,

8                                            */s/ Benjamin P. Sisney*
                                            BENJAMIN P. SISNEY (DC Bar # 1044721)
9                                             (*Pro Hac Vice* Application Forthcoming)
                                            AMERICAN CENTER FOR LAW AND JUSTICE
10                                           201 Maryland Avenue, NE
                                            Washington, DC 20002
11                                           Telephone: (202) 546-8890
                                            Facsimile: (202) 546-9309
12                                           Email: sekulow@aclj.org
                                            *Counsel for Amicus Curiae*
13

14

15

16

17

18

19

20

21

22

23

Brief of *Amicus Curiae* The American Center for Law and Justice in Support of Defendants
19-cv-00872-HSG