Douglas N. Letter, *General Counsel*
Todd B. Tatelman, *Deputy General Counsel*
Megan Barbero, *Associate General Counsel*
Josephine Morse, *Associate General Counsel*
Kristin A. Shapiro, *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Amicus Curiae the United States House of Representatives*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*,<br><br>*Defendants*. | Case No. 4:19-cv-00872-HSG<br><br>M.S.J. Hearing Date: August 29, 2019<br>Time: 2:00 PM<br><br>**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

INTRODUCTION .......... 1

ARGUMENT .......... 3

A. The Administration's Transfer, Obligation, and Expenditure of Funds to Construct a Border Wall Under Section 284 Violates the Appropriations Clause .......... 3

B. The Court Should Enjoin the Administration's Unconstitutional Transfer, Obligation, and Expenditure of Funds to Construct a Border Wall Under Section 284 .......... 10

CONCLUSION .......... 12

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*City & Cty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) .......... 3, 5

*Delta Data Sys. Corp. v. Webster*,
744 F.2d 197 (D.C. Cir. 1984) .......... 3

*ebay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) .......... 10

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013) .......... 11

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) .......... 11

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
138 S. Ct. 617 (2018) .......... 5

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) .......... 6

*Rodriguez v. Hernandez*,
715 F.3d 1127 (9th Cir. 2013) .......... 10

*U.S. Dep't of the Navy v. FLRA*,
665 F.3d 1339 (D.C. Cir. 2012) .......... 1, 3

**Constitution**

U.S. Const. art. I, § 9, cl. 7 .......... 1

**Statutes**

10 U.S.C. § 284 .......... 2

31 U.S.C. § 1532 .......... 3

Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No. 115-245 (2018) (to be printed at 132 Stat. 2981) .......... 4, 9

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, Div. C, Title I § 102(a), 110 Stat. 3009 (1996) .......... 7

Pub. L. No. 93-238, 87 Stat. 1026 (1974) .... 4

**Other Authorities**

165 Cong. Rec. S1362 (daily ed. Feb. 14, 2019) (statement of Sen. Leahy) .... 11

*The Federalist No. 51* (James Madison) .... 1

H. Rep. No. 93-662 (1973) .... 4, 5

H. Rep. No. 99-106 (1985) .... 4

iii

BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE* (4:19-cv-00872-HSG)

## INTRODUCTION

The United States House of Representatives submits this *amicus* brief in support of plaintiffs' motion for partial summary judgment because it has a compelling institutional interest in the Court's grant of relief prohibiting the Administration from spending federal funds without a valid Congressional appropriation.[1] The Appropriations Clause, U.S. Const. art. I, § 9, cl. 7, vests Congress with "exclusive power over the federal purse," and it is "one of the most important authorities allocated to Congress in the Constitution's 'necessary partition of power among the several departments.'" *U.S. Dep't of the Navy v. FLRA*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (Kavanaugh, J.) (quoting *The Federalist No. 51* (James Madison)).

Notwithstanding this bedrock constitutional principle, the Administration has improperly invoked inapposite appropriations authorities in an effort to circumvent Congress's rejection of President Trump's demand for $5 billion for the construction of a border wall. Indeed, Acting White House Chief of Staff and Director of the Office of Management and Budget Mick Mulvaney has boasted that President Trump's border wall "is going to get built with or without Congress."[2] The Administration's effort to build a border wall "without Congress" violates the Appropriations Clause, and this Court previously issued a preliminary injunction against that illegal action, correctly reasoning that plaintiffs were likely to succeed on their claims.

---

[1] The House has also filed its own suit in the U.S. District Court for the District of Columbia, seeking redress for its injury caused by the Administration's unconstitutional actions. *See U.S. House of Representatives v. Mnuchin*, 1:19-cv-00969 (D.D.C. filed Apr. 5, 2019), *appeal docketed*, No. 19-5176 (D.C. Cir. June 14, 2019). The district court in *Mnuchin* denied the House's application for a preliminary injunction based on its holding that the House lacked standing, *see* Mem. Opinion (ECF No. 54) at 24 (June 3, 2019), notwithstanding the Administration's assertion in this case that plaintiffs may not bring their claims because the statute at issue "regulates the relationship between Congress and the Executive." Mot for Stay. Pending Appeal, at 10, *Sierra Club v. Trump et al.*, No. 19-16102 (9th Cir. June 3, 2019) (Mot. for Stay).

[2] Andrew O'Reilly, *Mulvaney Says Border Wall Will Get Built, 'With or Without' Funding from Congress*, Fox News (Feb. 10, 2019), https://tinyurl.com/MulvaneyFoxNewsSunday.

The instant summary judgment motion concerns the Administration's transfer, obligation, and expenditure of $2.5 billion in federal funds to construct a border wall under 10 U.S.C. § 284, which authorizes the Department of Defense (DOD) to construct fences to block drug smuggling corridors along the border. Because most of the funding that Congress appropriated for DOD's Drug Interdiction and Counterdrug Activities account—the account that funds, among other things, DOD's activities under Section 284—has been used on different projects, the Administration has transferred $2.5 billion of funds that Congress appropriated for *other* purposes into the Drug Interdiction and Counterdrug Activities account for purposes of building a border wall.

The Administration claims that Sections 8005 and 9002 of the 2019 Department of Defense Appropriations Act authorize the transfer of this funding, but these sections only authorize transfers subject to specific requirements not satisfied here. Indeed, this Court previously concluded that "reading Section 8005 to permit this massive redirection of funds under these circumstances likely would amount to an unbounded authorization for [the Administration] to rewrite the federal budget," Order Granting in Part & Den. in Part Pls.' Mot. for Prelim. Inj., at 38, *Sierra Club v. Trump et al.*, No. 4:19-cv-00892 (N.D. Cal. Apr. 24, 2019), ECF No. 144 (Prelim. Inj. Order). (quotation marks omitted), and likely "would violate the Constitution's separation of powers principles," *id.*

The Court should therefore now grant summary judgment to plaintiffs on their claims with respect to Section 284, and issue a permanent injunction prohibiting the Administration from transferring, obligating, and spending funds in excess of Congressional appropriations on the construction of a border wall under Section 284. A permanent injunction is warranted because there is no other adequate remedy at law that can alleviate the harm to Congress—and the Nation—that will occur if the Administration is permitted to construct a border wall in the absence of a valid Congressional appropriation. By contrast, the Administration will suffer no cognizable harm by

being prevented from acting unconstitutionally. Moreover, if the Administration is enjoined from spending the funds at issue here, those funds are not lost; they return to the federal treasury and can be appropriated for use next year, if Congress believes at that time that they should be spent on such construction. Permitting Congress to determine the best use for these funds is, in fact, precisely what the Appropriations Clause demands. And this permanent injunction should be swiftly issued because the Administration asserts that it is daily incurring fees owed to construction companies while its invalid projects languish in uncertainty.

## ARGUMENT

### A. The Administration's Transfer, Obligation, and Expenditure of Funds to Construct a Border Wall Under Section 284 Violates the Appropriations Clause

The Administration's transfer, obligation, and expenditure of funds to construct a border wall under Section 284 lacks a valid Congressional appropriation and therefore violates the Appropriations Clause. Courts "have strictly enforced the constitutional requirement . . . that uses of appropriated funds be authorized by Congress." *FLRA*, 665 F.3d at 1342; *see also City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018). In considering whether the Administration's expenditures comply with Congress's will, "it is the court that has the last word and it should not shrink from exercising its power." *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 202 (D.C. Cir. 1984) (quotation marks and punctuation omitted).

A fundamental principle of appropriations law provides that "[a]n amount available under law may be withdrawn from one appropriation account and credited to another . . . only when authorized by law." 31 U.S.C. § 1532. The Administration claims that Sections 8005 and 9002 of the 2019 Department of Defense Appropriations Act authorize the transfer of $2.5 billion for purposes of constructing a border wall under Section 284. However, these provisions do not authorize such transfers, and they therefore provide no justification for the Administration's circumvention of Congress's appropriations authority.

**1.** Section 8005 does not authorize the Administration to transfer funds for purposes of constructing a border wall under Section 284. In pertinent part, section 8005 provides that:

> Upon determination by the Secretary of Defense that such action is necessary in the national interest, he may . . . transfer not to exceed $4,000,000,000 of . . . funds made available in this Act . . . *Provided*, That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress.

Pub. L. No. 115-245, § 8005, 132 Stat. 2981, 2999. Two limitations in this section preclude the Administration from transferring funds to construct a border wall. Indeed, as this Court has already explained, adopting the Administration's unbounded interpretation of this transfer provision would raise serious separation-of-powers concerns. *See* Prelim. Inj. Order at 38, 40-41.

*First*, Section 8005 does not authorize the transfer of funds in cases "where the item for which funds are requested has been denied by the Congress." This restriction was added in fiscal year 1974, to "tighten congressional control of the reprogramming process." H. Rep. No. 93-662, at 16 (1973); *see* Pub. L. No. 93-238, § 735, 87 Stat. 1026, 1044 (1974). The House committee report explained that DOD had sometimes "requested that funds which have been specifically deleted in the legislative process be restored through the reprogramming process," and that "[t]he Committee believe[d] that to concur in such actions would place committees in the position of undoing the work of the Congress." *Id*. Indeed, of considerable significance here, the Committee report stated that such a position would be "untenable." H. Rep. No. 93-662, at 16. Consistent with its purpose, this sort of appropriations restriction is intended to be "construed strictly" to "prevent the funding for programs which have been considered by Congress and for which funding has been denied." *See* H. Rep. No. 99-106, at 9 (1985) (discussing analogous appropriations restriction in Pub. L. No. 99-169, § 502(b), 99 Stat. 1005 (codified at 50 U.S.C. § 3094(b))).

Here, as this Court previously ruled, there can be no doubt that "Congress was presented with—and declined to grant—a $5.7 billion request for border barrier construction." Prelim. Inj.

Order at 34. Indeed, the President's rejected request for border wall construction precipitated the longest Federal Government shutdown in history. *Cf. City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018) ("In fact, Congress has frequently considered and thus far rejected legislation accomplishing the goals of the Executive Order. The sheer amount of failed legislation on this issue demonstrates the importance and divisiveness of the policies in play[.]"). In these circumstances, the Administration's attempt to invoke DOD's transfer authority under Section 8005 in order to spend money that Congress refused to appropriate is therefore "untenable." H. Rep. No. 93-662, at 16.

The Administration has argued that, in order for Congress to deny an item within the meaning of Section 8005, it must enact an appropriations rider explicitly prohibiting the use of funds for that item. *See* Mot. to Stay Prelim. Inj. Pending Appeal, at 10, *Sierra Club v. Trump et al.*, No. 4:19-cv-00892 (N.D. Cal. Apr. 29, 2019), ECF No. 146. The Administration has offered no support for its restrictive view of the limitation, and nothing in the text of the limitation requires that Congress enact such a rider. Moreover, the Administration's interpretation of the "denied by the Congress" limitation would render it meaningless: in cases where a rider explicitly prohibits the expenditure of funds on an item, the Administration could not spend appropriated funds on that item *regardless* of the "denied by the Congress" limitation. If the Administration's interpretation were correct, this limitation would be surplusage—an interpretation this Court should avoid. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632 (2018).

The Administration has alternately contended that Congress's denial of an item could also be noted in the House conference report on an appropriations bill. Reply in Supp. of Mot. for Stay Pending Appeal, at 8-9, *Sierra Club v. Trump et al.*, No. 19-16102 (9th Cir. June 14, 2019). In particular, the Administration has flagged the "table[s]" in such reports setting forth "project level adjustments" as places where one would "see these denials." Tr. of Proceedings at 92, *House v.*

*Mnuchin et al.*, Case No. 19-969 (May 23, 2019) (*Mnuchin* Tr.). But while a conference report might *sometimes* evidence Congress's denial of an item, that is not universally true, and Congress's denial of an item is in no manner limited to items specifically noted in a conference report. There is nothing in the text of the "denied by the Congress" limitation that restricts it to such circumstances, and interpreting the provision in such a manner would exclude the most obvious denial of funding in recent history: Congress's clear rejection of President Trump's request for $5 billion for a border wall. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) (plurality) ("We need not leave our common sense at the doorstep when we interpret a statute.").

The Administration has also contended that Congress's denial of a border wall appropriation is "irrelevant" because Congress denied a funding request by the Department of Homeland Security (DHS), and the supposedly "relevant question under Section 8005 is . . . whether Congress ever 'denied' DoD funds to provide counter-drug support" for border wall projects. Mot for Stay. Pending Appeal, at 15, *Sierra Club v. Trump et al.*, No. 19-16102 (9th Cir. June 3, 2019) (Mot. for Stay). This purported distinction is wrong. There is no relevant distinction between DHS's construction of a border wall directly rather than DOD's construction of a border wall for DHS that somehow undermines Congress's assessment that *DHS does not need a $5 billion border wall*. And the purpose of the "denied by the Congress" limitation is to prevent DOD from using its transfer authority to circumvent Congress's appropriations decisions, which is precisely what the Administration is attempting to accomplish here.

Contrary to the Administration's current claim that using defense funds to construct a border wall for DHS is completely different from using DHS funds to build a border wall, the Administration has touted its use of defense funds for such construction as part of its singular "Border Security Victory" in fulfillment of the Administration's overall goal to build a wall along

the southern border.[3] The applicability of DHS's National Environmental Policy Act (NEPA) waivers in fact *depends* on the Administration's assertion that DOD's border wall projects are being constructed pursuant to DHS's authority under Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, Div. C, Title I § 102(a), 110 Stat. 3009 (1996) (codified at 8 U.S.C. § 1103 note). *See* Opp. to Mot. for Prelim. Inj., at 25-26, *Sierra Club v. Trump et al.*, No. 4:19-cv-00892 (N.D. Cal. Apr. 25, 2019), ECF No. 64; Prelim. Inj. Order at 47-48. The Administration cannot plausibly contend that DOD's construction of a border wall is indistinguishable from DHS's construction of a border wall for purposes of NEPA, but entirely distinct for purposes of Section 8005.

Moreover, even under the Administration's interpretation of the "denied by the Congress" limitation, their Section 8005 transfers still fail. The project level adjustment tables in the Committee Report on the 2019 Defense Appropriations Act reveal that Congress "denied" DOD additional counter-drug funding as unnecessary: While DOD requested $547 million for the military's counter-narcotics support activities, Congress specifically rejected $30 million of this request as "[e]xcess to need" and instead appropriated only $517 million.

The Administration cannot escape the fact that it has argued in court—including in this Court—that DOD is constructing a border wall for DHS under Section 284 because Congress denied "a direct appropriation" to DHS.[4] Accordingly, Section 8005 in no manner authorizes the Administration to circumvent that denial.

---

[3] *See Fact Sheet: President Donald J. Trump's Border Security Victory*, White House (Feb. 15, 2019), http://tinyurl.com/WHBorderVictory.

[4] Tr. of Proceedings at 80, *California et al. v. Trump et al.*, Case No. 19-872 (May 17, 2019) ("The plan was to get a direct appropriation from Congress to do what the President wanted to do . . . so DOD had no reason or occasion to be requesting a larger 284 appropriation."); *Mnuchin* Tr. at 94 ("[N]obody foresaw . . . that [Section 8005] . . . would come into play" because "[e]veryone thought this would all happen in the DHS appropriations bill.").

*Second*, Section 8005 only authorizes transfers "based on unforeseen military requirements." Congress included this limitation to confine DOD's transfer authority to situations where unanticipated circumstances justify a departure from Congress's previously authorized spending decisions. For example, DOD has used this authority to transfer funds to pay for unexpected hurricane damage to military bases.[5]

Here, as this Court previously observed, the Administration's "argument that the need for the requested border barrier construction funding was 'unforeseen' cannot logically be squared with the Administration's multiple requests for funding for exactly that purpose dating back to at least early 2018." Prelim. Inj. Order at 35. Indeed, President Trump has been demanding $5 billion for a border wall since summer 2018, and he has been expressing his views about a border crisis since the start of his election campaign. The Administration's alleged need to build a border wall was therefore entirely foreseen—Congress simply disagreed that $5 billion for a border wall was necessary and proper.

The Administration has conceded that DHS's purported need for "border wall funding" was foreseen, but it has argued that this fact is "irrelevant" because "the relevant question under Section 8005 is whether DoD's specific need in February 2019 to provide counter-drug support to DHS under Section 284 was 'foreseen' at the time of the September 2018 appropriation." Mot for Stay at 15-16. The Administration's view of this limitation is unconvincing. Even according to the Administration, the "unforeseen military requirement" here is DOD's supposed need *to support DHS in constructing a border wall*. *See id.* The conceded foreseeability of DHS's need for a border wall is therefore plainly relevant.

The facts also do not support the Administration's claim that DOD's alleged need to support

[5] Office of the Under Secretary of Defense (Comptroller), DOD Serial No. FY 04-37 PA, Reprogramming Action (Sept. 3, 2004), http://tinyurl.com/DOD2004ReprogrammingAction.

DHS under Section 284 was unforeseen until February 2019. *See* Mot. for Stay at 16. The Administration conceded in court that DOD considered using Section 284 to support DHS's border barrier construction *in early 2018*.[6] Specifically, DOD recently informed the House Committee on Armed Services that its Comptroller had withheld *nearly $1 billion* of fiscal year 2018 counter-drug funding until July 2018 because DOD was considering using that funding for "Southwest Border construction."[7]

Accordingly, the Administration's transfers under Section 8005 for purposes of building a border wall plainly are not based on "unforeseen military requirements." The Administration's transfer of funds under Section 8005 for obligation and expenditure under Section 284 on the construction of a border wall is therefore unauthorized and in violation of the Appropriations Clause.

**2.** The Administration's transfer under Section 9002 fares no better. In pertinent part, section 9002 provides that:

> Upon the determination of the Secretary of Defense that such action is necessary in the national interest, the Secretary may, with the approval of the Office of Management and Budget, transfer up to $2,000,000,000 between the appropriations or funds made available to the Department of Defense in this title: . . . *Provided further*, That the authority provided in this section is in addition to any other transfer authority available to the Department of Defense and is subject to the same terms and conditions as the authority provided in section 8005 of this Act.

Pub. L. No. 115-245, § 9002, 132 Stat. 2981, 3042. Section 9002 provides that its transfer authority "is subject to the same terms and conditions as the authority provided in section 8005." Accordingly, the Administration's transfer under Section 9002 fails for the same reasons that its transfers under Section 8005 fail, and the Administration's transfer of funds under Section 9002 for

[6] *See Mnuchin* Tr. at 95 ("It is true that it was foreseeable in general that someone at some time might ask DoD to use its 284 authority to engage in border barrier construction.").

[7] Decl. of Paul Arcangeli, Ex. A to Mot. for Leave to File Supp. Decl. (ECF No. 44-1), *House v. Mnuchin et al.*, Case No. 19-969 (May 15, 2019).

obligation and expenditure under Section 284 on the construction of a border wall is unauthorized and in violation of the Appropriations Clause.

**B.    The Court Should Enjoin the Administration's Unconstitutional Transfer, Obligation, and Expenditure of Funds to Construct a Border Wall Under Section 284**

The Court should issue an injunction prohibiting the Administration from transferring, obligating, and spending funds in excess of Congressional appropriations on the construction of a border wall under Section 284. Absent an injunction, Congress's Appropriations Clause interests will be irreparably injured, which is of overriding concern to the House as amicus here. Once the Administration unconstitutionally expends the funds at issue here, there is no way to claw them back, nor is there any other adequate "remed[y] available at law" that could undo the damage caused by the Administration's unconstitutional actions. *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006). The Appropriations Clause interests of Congress and the Nation as a whole have already been injured, and will continue to be injured, if the Administration is permitted to obligate and expend the unlawfully transferred funds to construct a border wall.

By contrast, because the Administration "cannot suffer harm from an injunction that merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), the Administration would suffer no cognizable hardship by being prevented from unconstitutionally spending funds on a border wall without a valid Congressional appropriation. And even if the Administration could claim a countervailing harm, the harm to Congress—and our Constitution—that has occurred and will continue to occur absent injunction outweighs any such asserted harm.

The Administration has claimed that an injunction would "frustrate[] the government's ability to stop the flow of drugs across the border." Mot. for Stay at 19. That claim is suspect because the Administration itself acknowledges that the overwhelming majority of drugs are

smuggled at ports of entry, not between.[8] In fiscal year 2018, for example, of the total amount of drugs seized at the border, approximately 88% of cocaine, 90% of heroin, 40% of marijuana, 83% of methamphetamine, and 82% of fentanyl were seized at ports of entry.[9] Administration documents also reveal that (in addition to altering their routes) smugglers evade border walls by using drones, tunnels, and other techniques.[10] For these reasons, among others, Congress refused to fund "President Trump's wasteful wall."[11]

Moreover, if the Administration is enjoined from illegally spending the funds at issue here on a border wall, those funds are not lost, but instead revert back to the federal treasury. If Congress—the *only* body that can decide how federal funds should be appropriated—then decides that money should be used to build a border wall, it will appropriate that money, which the Administration could at that time lawfully spend. Accordingly, the Administration will have the funds it seeks if Congress decides that public money should indeed be spent as the Administration wishes.

Any claims of hardship by the Administration here also lack credibility because President Trump publicly announced that he "didn't need to do this"—*i.e.*, declare a national emergency in order to repurpose funds for immediate construction of a wall—because his Administration could "build the wall over a longer period of time."[12] President Trump never would have made such a

[8] *See CBP Enforcement Statistics FY 2019*, U.S. Customs & Border Protection, https://tinyurl.com/CBPFY19Stats (last visited June 11, 2019).

[9] *See id.* (amounts calculated from CBP data)

[10] *Drug Smuggling at the Border*, U.S. Customs & Border Protection, https://tinyurl.com/CBPDrugSmugglingPresentation (last visited June 11, 2019).

[11] 165 Cong. Rec. S1362 (daily ed. Feb. 14, 2019) (statement of Sen. Leahy).

[12] *Remarks by President Trump on the National Security and Humanitarian Crisis on Our Southern Border*, White House (Feb. 15, 2019, 10:39 AM), http://tinyurl.com/TrumpRoseGardenRemarks.

statement to the American people if he actually believed that a southern border wall needed to be built immediately in order to prevent irreparable injury to the United States.

Finally, if the House's arguments are correct, the public interest obviously demands a permanent injunction to be quickly issued. "[T]he Constitution is the ultimate expression of the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (quotation marks omitted), and "all citizens have a stake in upholding the Constitution," *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quotation marks omitted). It is therefore plainly appropriate for the Court for to enjoin the Administration from unconstitutionally building a border wall "without Congress." Such an injunction would mean that the funds at issue here would be spent according to the will of Congress, not the will of President Trump—precisely what the Appropriations Clause requires.

**CONCLUSION**

The Court should therefore grant plaintiffs' motion for partial summary judgment and issue a permanent injunction prohibiting the Administration from transferring, obligating, and spending funds in excess of Congressional appropriations on the construction of a border wall under Section 284.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
*General Counsel*
TODD B. TATELMAN
*Deputy General Counsel*
MEGAN BARBERO
*Associate General Counsel*
JOSEPHINE MORSE
*Associate General Counsel*
KRISTIN A. SHAPIRO
*Assistant General Counsel*

OFFICE OF GENERAL COUNSEL*
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Amicus Curiae the United States House of Representatives*

* Attorneys for the Office of General Counsel for the U.S. House of Representatives are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court." 2 U.S.C. § 5571.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2019, I caused the foregoing document to be filed via the U.S. District Court for the Northern District of California's CM/ECF system, which I understand caused service on all registered parties.

                                       */s/ Douglas N. Letter*
                                       Douglas N. Letter