XAVIER BECERRA
Attorney General of California
ROBERT W. BYRNE
SALLY MAGNANI
MICHAEL L. NEWMAN
Senior Assistant Attorneys General
MICHAEL P. CAYABAN
CHRISTINE CHUANG
EDWARD H. OCHOA
Supervising Deputy Attorneys General
BRIAN J. BILFORD
NOAH M. GOLDEN-KRASNER
SPARSH S. KHANDESHI
HEATHER C. LESLIE
JANELLE M. SMITH
JAMES F. ZAHRADKA II
LEE I. SHERMAN (SBN 272271)
Deputy Attorneys General
 300 S. Spring St., Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 269-6404
 Fax: (213) 897-7605
 E-mail: Lee.Sherman@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA et al.;** | Case No. 4:19-cv-00872-HSG |
| Plaintiffs, | **PLAINTIFF STATES OF CALIFORNIA AND NEW MEXICO'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SECTIONS 284, 8005, AND 9002, AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **v.** | |
| **DONALD J. TRUMP, in his official capacity as President of the United States of America et al.;** | |
| Defendants. | Judge:      The Honorable Haywood S. Gilliam, Jr. |
| | Trial Date:   None set |
| | Action Filed:  February 18, 2019 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.    California and New Mexico Are Entitled to Partial Summary Judgment that Defendants' Actions Are Unlawful........................................................................ 1

    A.    Defendants Exceeded Their Authority Under §§ 8005, 9002, and 284 ...................................................................................................... 1

        1.    Defendants Cannot Preclude Judicial Review ............................... 1

        2.    Defendants Exceeded Their Authority Under § 8005.................... 4

        3.    Defendants Have Exceeded Their Authority Under § 9002 .......... 5

        4.    Defendants Have Exceeded Their Authority Under § 284 ............ 6

    B.    Defendants' Actions Violate the United States Constitution...................... 7

        1.    Defendants Violated Separation of Powers Principles................... 8

        2.    Defendants Violated the Appropriations Clause........................... 9

        3.    Defendants Violated the Presentment Clause ............................. 10

    C.    Defendants Have Violated the APA .......................................................... 11

II.    California and New Mexico Are Entitled to Injunctive Relief ............................. 12

    A.    California and New Mexico Would Suffer Irreparable Harm .................. 12

        1.    Harms to California's and New Mexico's Sovereignty ............... 12

        2.    Harms to California's and New Mexico's Environment, Wildlife, and Natural Resources .................................................. 13

    B.    The Balance of Hardships and Public Interest Favor Granting a Permanent Injunction ............................................................................. 14

    C.    Enjoining Any Use of §§ 8005, 9002, and 284 for Barrier Construction in California and New Mexico Is Appropriate................... 15

CONCLUSION ............................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Armstrong v. Exceptional Child Ctr., Inc.*
135 S. Ct. 1378 (2015) ................................................................................................................1

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*
950 F.2d 1401 (9th Cir. 1991)...................................................................................................14

*Citizens to Preserve Overton Park, Inc. v. Volpe*
401 U.S. 402 (1971) ....................................................................................................................3

*City of Sausalito v. O'Neill*
386 F.3d 1186 (9th Cir. 2004)................................................................................................2, 3

*Clarke v. Sec. Indus. Ass'n*
479 U.S. 388 (1987) .................................................................................................................2, 3

*Clinton v. City of New York*
524 U.S. 417 (1998) .........................................................................................................7, 11, 13

*Crickon v. Thomas*
579 F.3d 978 (9th Cir. 2009)......................................................................................................11

*Dalton v. Specter*
511 U.S. 462 (1994) .................................................................................................................7, 8

*E. Bay Sanctuary Covenant v. Trump*
909 F.3d 1219 (9th Cir. 2018)....................................................................................................15

*Feldman v. Wood*
335 F.2d 264 (9th Cir. 1964)........................................................................................................5

*First Nat'l. Bank & Tr. Co. v. Nat'l Credit Union Admin.*
988 F.2d 1272 (D.C. Cir. 1993) ...................................................................................................4

*Haitian Refugee Ctr. v. Gracey*
809 F.2d 794 (D.C. Cir. 1987) .....................................................................................................1

*Kansas v. United States*
249 F.3d 1213 (10th Cir. 2001).......................................................................................3, 12, 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
572 U.S. 118 (2014) .....................................................................................................................2

*Lincoln v. Vigil*
508 U.S. 182 (1993) .....................................................................................................................5

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

CASES

4

*Mach Mining, LLC v. E.E.O.C.*
5
   135 S. Ct. 1645 (2015) ............................................................................................................3

6

*Maryland v. King*
   567 U.S. 1301 (2012) ...........................................................................................................12

7

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*
8
   567 U.S. 209 (2012) ..............................................................................................................2

9

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*
   463 U.S. 29 (1983) ..............................................................................................................12

10

11

*Nat'l Wildlife Fed'n v. Burlington N.R.R.*
   23 F.3d 1508 (9th Cir. 1994) ..............................................................................................14

12

*Nevada v. DOE*
13
   400 F.3d 9 (D.C. Cir. 2005) ............................................................................................9, 10

14

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
   434 U.S. 1345 (1977) ...........................................................................................................12

15

16

*Nken v. Holder*
   556 U.S. 418 (2009) ............................................................................................................15

17

*Office of Pers. Mgmt v. Richmond*
18
   496 U.S. 414 (1990) ..............................................................................................................9

19

*Rodriguez v. Robbins*
   715 F.3d 1127 (9th Cir. 2013) ............................................................................................15

20

*Salazar v. Ramah Navajo Chapter*
21
   567 U.S. 1820 (2012) ............................................................................................................9

22

*Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*
23
   87 F.3d 1356 (D.C. Cir. 1996) ..........................................................................................2, 3

24

*United States v. Will*
   449 U.S. 200 (1980) ............................................................................................................10

25

*Whitman v. Am. Trucking Ass'ns*
26
   531 U.S. 457 (2001) ..............................................................................................................6

27

*Youngstown Sheet & Tube Co. v. Sawyer*
28
   343 U.S. 579 (1952) ..........................................................................................................7, 8

iii

# TABLE OF AUTHORITIES
### (continued)

Page

**CASES**

*Zadvydas v. Davis*
  533 U.S. 678 (2001) ........................................................................................7

**FEDERAL STATUTES**

5 U.S.C.
  § 706(2)(A).........................................................................................11
  § 706(2)(B)-(C) ...................................................................................11

10 U.S.C.
  § 284............................................................................ *passim*
  § 284(b)(7) .........................................................................10
  § 284(h)(1)(B), (i)(3)...........................................................6
  § 2801(a) .............................................................................6

Pub. L. No. 101-511, 104 Stat. 1856 (1990) ...................................10

Pub. L. No. 109-234, 120 Stat. 418 (2006) .....................................10

Pub. L. No. 110-116, 121 Stat. 1295 (2007) ...................................10

Pub. L. No. 115-245, 132 Stat. 2981 (2018) ........................... *passim*

Pub. L. No. 116-6, 133 Stat. 13 (2019) .............................................8

**OTHER AUTHORITIES**

Government Accountability Office, Office of the General Counsel, Principles of
  Federal Appropriations Law (4th Ed. 2017) (GAO Red Book) ..........................9, 10

H.R. Rep. No. 93-662 (1973).............................................................3

H.R. Rep. No. 101-665 (1990)..........................................................3, 6

# INTRODUCTION

In their Opposition,[1] Defendants raise no new arguments sufficient to change this Court's prior conclusion that Defendants acted unlawfully by diverting DOD funds appropriated for other purposes toward border barrier construction that Defendants requested but Congress denied. The record now is even stronger that Defendants not only acted ultra vires, but violated the United States Constitution and the APA. Defendants have also raised no genuine disputes of material fact to rebut California's and New Mexico's (Plaintiff States or States) irreparable injuries caused by the diversions. And the border barrier does not advance the United States' interest in drug interdiction enough to outweigh the public interest in enjoining unlawful and unconstitutional executive branch conduct, enforcing the States' duly enacted laws, and protecting the States' environment. The States are entitled to a declaratory judgment and injunction of the transfer, obligation, and use of funds via §§ 8005, 9002, and 284 toward construction of border barriers in California and New Mexico. This Court should grant Plaintiff States' motion for partial summary judgment and deny Defendants' cross-motion.

# ARGUMENT

## I. CALIFORNIA AND NEW MEXICO ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT DEFENDANTS' ACTIONS ARE UNLAWFUL

### A. Defendants Exceeded Their Authority Under §§ 8005, 9002, and 284

#### 1. Defendants Cannot Preclude Judicial Review

Defendants' argument that the Plaintiff States are not within the zone of interests of §§ 8005 and 9002—and, for the first time, § 284, Opp'n 9-10, 12-13—fails. As this Court correctly recognized, an equitable cause of action is available when the executive acts in excess of statutory authority. *States* PI Order 10-12 (citing, *inter alia*, *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015)); *Sierra Club* PI Order 28-30. Since Defendants do not argue that Plaintiff States lack Article III standing, *see* Opp'n 9-10, 12-13, that should be the end of the inquiry. *See Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 811 n.14 (D.C. Cir. 1987).

---

[1] Defendants' affirmative cross-motion for partial summary judgment is inconsistent with the Court's Scheduling Order (ECF No. 174). To the extent the Court considers Defendants' premature affirmative motion, Plaintiff States respond to that motion herein.

1

Pl. States' Reply ISO Mot. for Partial Summ. J. and Opp'n to Defs.' Mot. for Partial Summ. J. (4:19-cv-00872-HSG)

But even if the zone of interests test applies, Plaintiff States satisfy it. The zone of interests test is "generous," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014), and "not meant to be especially demanding," *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224-25 (2012). Agency action is "presumptively reviewable," and a party's interest need only be "*arguably* within" a statute's zone of interests. *Id.* (emphasis added). Statutes must be viewed "in the overall context" of the broad "statutory scheme," and Congress's intent to exclude a category of plaintiffs from judicial review must be "fairly discernible" from that scheme. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 401, 399 (1987).

In *Patchak*, the Supreme Court found the zone of interests test satisfied by a plaintiff purporting harms to his environmental and aesthetic interests caused by federal government action allegedly in excess of its authority under a statute authorizing acquisition of land for American Indian tribes. 567 U.S. at 213, 224-28. The Court reasoned that although the statute governed land "acquisition," the contemplated *use* of the acquired land was entwined with the purpose of the statute and, thus, the harm to the neighboring landowner from that use fell within the statute's zone of interests. *Id.* at 225-26. Here, § 8005 and § 9002, which incorporates § 8005 by reference), is even more closely entwined with the ultimate "use" of the funds at issue, because under § 8005 funds can only be transferred if they are *used* for higher priority items and unforeseen military requirements, and not *used* for an item for which Congress has denied funding. Thus, the harms to the Plaintiff States from the *use* of the funds transferred under §§ 8005 and 9002 bring them within the zone of interests of those statutes.

Defendants offer little analysis of the zone of interests test. They merely assert, without explanation, that the test is not satisfied here because § 8005 "exists to govern the relationship between Congress and DoD with respect to military spending, not protect the State's interest in environmental protection." Opp'n 10. But they offer no reason why the zone of interests should be limited to parties that Congress intended to benefit. Indeed, one of the very cases they cite (Opp'n 10 n.4) expressly recognizes that "there need be no indication of congressional purpose to benefit the would-be plaintiff." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th Cir. 2004). Thus, in considering an appropriations-related statute, *Scheduled Airlines Traffic Offices, Inc. v.*

2

1    *Dep't of Def.*, 87 F.3d 1356, 1359 (D.C. Cir. 1996), the court ruled that although the statute was

2    not intended to benefit anything "other than the public fisc and Congress's appropriations power,"

3    *id.* at 1359-60, private plaintiffs fell within its zone of interests because their interest was

4    "sufficiently congruent" with the statute and not "more likely to frustrate than to further . . .

5    statutory objectives." *Id.* at 1360 (quoting *Clarke*, 479 U.S. at 397). The same is true here.

6    Sections 8005 and 9002 were intended to "tighten congressional control of the re-programming

7    process," H.R. Rep. No. 93-662, at 16-17 (1973), and Plaintiff States' interest in avoiding harm to

8    their environment (and, as shown below, sovereignty) from Defendants' skirting of those

9    limitations is congruent with that objective and likely to further it.

10          Likewise, the legislative history for § 284 manifests Congress's intent to limit the scale of

11   DOD support for DHS. DOD resources were not to "primarily be used to fund" counter-drug

12   activities of other agencies. H.R. Rep. No. 101-665, at 203 (1990). The interests expressed in

13   these limitations are "congruent" with the Plaintiff States' interests in ensuring that Defendants do

14   not evade such limitations in a manner that harms them. *Scheduled Airlines*, 87 F.3d at 1359.

15   There is nothing in the text and legislative history of § 284 that even hints that states would be

16   precluded from protecting their sovereign interests from the environmental impact that naturally

17   ensues from the "[c]onstruction of roads and fences" within their boundaries. *See Kansas v.*

18   *United States*, 249 F.3d 1213, 1223 (10th Cir. 2001) ("Surely Congress did not intend to render

19   the State powerless to protect its sovereign interests in this situation.").

20          Defendants' objection that "[n]othing in the statute suggests that Congress intended to

21   give states a remedy for protecting against the alleged negative externalities of barrier

22   construction," Opp'n 13, also misses the mark. As noted above, the zone of interests test does not

23   require any intent to benefit a party, much less to create a right of action. *See City of Sausalito*,

24   386 F.3d at 1200. Moreover, to the extent that Defendants are arguing that *no* party could bring a

25   claim to challenge their unlawful diversions under these provisions, they are turning the "strong

26   presumption favoring judicial review" on its head. *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct.

27   1645, 1651 (2015). This presumption may be overcome only with "clear and convincing

28   evidence" to preclude judicial review. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S.

3

402, 410 (1971). Defendants do not—and cannot—present such evidence. Indeed, they fail to offer any reason why Congress would not want to allow the Plaintiff States to enforce these provisions' limitations. Thus, Plaintiff States are "suitable challenger[s] to [enforce] the statute." *First Nat'l. Bank & Tr. Co. v. Nat'l Credit Union Admin.*, 988 F.2d 1272, 1275 (D.C. Cir. 1993).

### 2.      Defendants Exceeded Their Authority Under § 8005

Defendants dispute this Court's interpretation of the terms "item," "denied," and "unforeseen" in § 8005, Opp'n 10, but fail to offer any persuasive rationale for their strained interpretation of these terms. *First*, Defendants contend that when § 8005 refers to an "item for which funds are requested," it means "a particular budget item requiring additional funding beyond the amount in the DoD appropriations for the fiscal year." *Id.* 11. Although they note that § 8005 appears in a DOD appropriations statute, they do not dispute this Court's determination that there is nothing in the language or legislative history of the provision suggesting such a limit. *States* PI Order 16; *Sierra Club* PI Order 34. Even more fundamentally, Defendants make no attempt to explain why Congress would have wanted to allow DOD to make transfers for items that it had denied to other parts of the executive branch, thereby confirming that their proffered interpretation is implausible as well as contradicted by the provision's plain language.

*Second*, Defendants repeat the unsupportable assertion that, in determining whether there was an "unforeseen" military requirement, the analysis should focus not on the underlying requirement for border barriers, but rather on "DOD's support for the projects requested by DHS under § 284." Opp'n 11. As this Court already has observed, this interpretation is "not reasonable," *States* PI Order 18; *Sierra Club* PI Order 36. Notably absent from Defendants' brief is any attempt to show why Congress would have intended to condition the use of § 8005 on the existence of such a request or otherwise show that its interpretation of "unforeseen" is reasonable. Defendants likewise ignore the evidence that as of early 2018, Defendants *were* considering use of "DOD's support for the projects requested by DHS under § 284." *Compare* Pls.' MSJ 11 & RJN Ex. 8 ¶ 2, *with* Opp'n 11.

*Third*, the mere fact that Congress has authorized DOD to use its resources under § 284 in some instances to construct fencing, Opp'n 11-12, does not automatically make border barrier

4

1   construction a "military requirement." The Ninth Circuit has rejected an interpretation of the

2   word "requirement" to "include permission." *See Feldman v. Wood*, 335 F.2d 264, 265 (9th Cir.

3   1964). "This simply is not the meaning of the word. A right to do an act is far different from a

4   requirement to do it." *Id.*

5       *Finally*, Defendants' reliance (Opp'n 12) on *Lincoln v. Vigil*, 508 U.S. 182 (1993), is

6   misplaced. That case dealt with a lump-sum appropriation, which is a far cry from the highly

7   restricted authority granted in § 8005, and *Lincoln* recognized that in any case, "an agency is not

8   free simply to disregard statutory responsibilities." *Id.* at 193. Far from suggesting that the

9   exercise of such authority cannot raise constitutional questions, *Lincoln* noted that the

10  constitutional issues raised in that case were not ripe and remanded for consideration of those

11  claims. *Id.* at 195 (recognizing that "in the absence of a clear expression of contrary congressional

12  intent, . . . judicial review will be available for colorable constitutional claims").

### 3.    Defendants Have Exceeded Their Authority Under § 9002

14      First, it is undisputed that Defendants' transfer of funds via § 9002 must satisfy the same

15  criteria as § 8005, Opp'n 12, so the purported transfer under § 9002 is unlawful for the same

16  reasons as the transfer under § 8005. Second, Defendants argue that because Congress and the

17  president have issued designations under Title IX of the FY 2019 DOD Appropriations Act, Pub.

18  L. No. 115-245, 132 Stat. 2981 (2018) (FY 2019 DOD Appropriations Act), the transfer of funds

19  is legal under § 9002 itself. Opp'n 12-13. However, Defendants fail to address the key point that

20  because the funds are specifically "designated by the Congress *for Overseas Contingency*

21  *Operations/Global War on Terrorism* [OCO/GWOT]," their use of the funds must be consistent

22  with those purposes.  FY 2019 DOD Appropriations Act at 3042. Defendants do not plan to use

23  the funds diverted here for OCO/GWOT purposes. The construction of a wall along our southern

24  border does not occur overseas.

25      Also, per the president's designation, OCO/GWOT appropriations for FY 2019 are only

26  meant to cover "costs necessary to achieve U.S. national security goals in Afghanistan, the

27  broader Middle East, and other designated conflict zones and to address other emergent crises."

28  Partial MSJ RJN Ex. 9. Defendants argue that the "national emergency on the southern border" is

5

1    within "other emergent crises" in the president's designation. Opp'n 13. However, in the *Sierra*

2    *Club* case, this Court rejected a similar argument by Defendants regarding the term "other

3    activity" under 10 U.S.C. § 2801(a), ruling that Defendants' attempt to use this catchall term to

4    encompass the border barrier was inconsistent with the *noscitur a sociis* and *ejusdem generis*

5    canons of construction and would render the specific list of locations meaningless. *Sierra Club* PI

6    Order 42-46. This Court's reasoning applies with equal force to the catchall "other emergent

7    crises" term, which "appears after a list of closely related types" of overseas conflict zones. *Id.*

8    45. Accepting Defendants' interpretation would render the list of overseas conflict zones in the

9    designation meaningless, *id.*, and thus, "other emergent crises" should be read as covering only

10   similar armed conflicts overseas.

### 4.   Defendants Have Exceeded Their Authority Under § 284

12   Defendants do not attempt to explain why Congress would have required DOD to provide

13   notice for "small scale construction" projects of $750,000 or under, 10 U.S.C. § 284(h)(1)(B),

14   (i)(3), but not for a massive construction project such as the one proposed here. Opp'n 14-15.

15   Defendants' response is that, for whatever reason, this is the outcome that Congress intended, and

16   posit that "nothing in the statute even arguably defines any upper limit" on DOD's support. *Id.*

17   But this Court has already rejected Defendants' view; Congress "does not, one might say, hide

18   elephants in mouseholes." *States* PI Order 21 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S.

19   457, 468 (2001)); *Sierra Club* PI Order 39-40. Just as Congress did not authorize DOD's

20   resources to "primarily be used to fund the drug war," *see* Opp'n 14 n.5 & H.R. Rep. 101-665, at

21   20 (1990), Congress did not authorize DOD to "primarily" fund DHS's border wall project.

22   Defendants also provide no evidence that "Congress's past approval of relatively small

23   expenditures," *States* PI Order 21; *Sierra Club* PI Order 39, approaches the level of the multi-

24   billion-dollar project contemplated here. This Court already considered these previous DOD

25   projects that Defendants again rely on in their Opposition (at 14), and found that they do not

26   speak "to Defendants' current claim that the Acting Secretary has authority to redirect sums over

27   a hundred orders of magnitude greater to that account in the face of Congress' appropriations

28   judgment in the CAA." *States* PI Order 21; *Sierra Club* PI Order 39.

6

1     Finally, Defendants erroneously claim the Plaintiff States "do not dispute that the projects

2  at issue are being constructed in 'drug smuggling corridors' along the U.S.-Mexico border."

3  Opp'n 14. The factual predicates for this conclusion were not put at issue until Defendants'

4  current motion; Defendants should not be granted summary judgment based on these disputed

5  facts. For example, while Defendants proffer a declaration stating there have been "107 drug

6  events between border crossings in the El Centro Sector" in this fiscal year, ECF No. 182-9, ¶ 8,

7  the declaration fails to state where any of these events occurred within the 70-mile wide El Centro

8  Sector, encompassing approximately 100,000 square miles. Supplemental Request for Judicial

9  Notice (Supp. RJN) Exh. 10. And public statements issued by the Border Patrol show that the

10  majority of border patrol agent drug seizures occur at vehicle inspection checkpoints along U.S.

11  highways that are 30 to 40 miles from the border and nowhere near the proposed El Centro

12  Project 1. Cayaban Decl. ¶¶ 6-15; Supp. RJN Exhs. 11-28. In light of these statements,

13  Defendants have not carried their burden of proof to show that drug corridors exist in the relevant

14  locations.[2]

15     **B.    Defendants' Actions Violate the United States Constitution**

16     Defendants again rely on *Dalton v. Specter*, 511 U.S. 462 (1994), as a reason to ask this

17  Court to not consider the serious constitutional infirmities that arise from Defendants' statutory

18  interpretation and illegal diversions. Opp'n 15-16. But *Dalton* does not (and could not) hold that a

19  constitutional claim does not arise when the executive branch is exerting its powers based on a

20  statute that is itself unconstitutional, *Clinton v. City of New York*, 524 U.S. 417, 445 (1998), nor

21  did it upend the cardinal principle that "[s]tatutes must be interpreted to avoid serious

22  constitutional problems," *States* PI Order 18 (citing *Zadvydas v. Davis*, 533 U.S. 678, 689

23  (2001)); *Sierra Club* PI Order 36-37 (same). Moreover, while *Dalton* rejected the suggestion that

24  the Constitution is violated "whenever the President acts in excess of his statutory authority," 524

25  U.S. at 471, it did not hold that an independent constitutional claim cannot lie when the president

26  acts without statutory authority. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-

27  ─────────────
   [2] Similarly, for the El Paso Sector, which shares a 180-mile land border with Mexico and
28  encompasses 125,000 square miles (Supp. RJN Ex. 10), Defendants have failed to produce any
   evidence to support an inference that the project areas include drug-smuggling corridors.

7

1     88 (1952). *Dalton* merely held that Plaintiffs could not sustain a constitutional claim premised

2     solely on an allegation that the president "violated the terms" of a statute governing the closure of

3     military bases. 511 U.S. at 472-74. Here, while the Plaintiff States allege that Defendants

4     exceeded their authority, *see supra* 1-7, they also bring independent constitutional claims based

5     directly on specific limitations in the Constitution.  Consequently, as this Court implicitly

6     recognized in considering the "serious constitutional questions" that arise from Defendants'

7     reading of § 8005, *States* PI Order 18-24; *Sierra Club* PI Order 36-42, nothing bars this Court

8     from addressing the constitutionality of Defendants' actions. Thus, the Court should reject

9     Defendants' reliance on *Dalton* and find their actions unconstitutional.

10           **1.     Defendants Violated Separation of Powers Principles**

11       Defendants assert there is no separation of powers violation because they acted pursuant to

12     authority granted by Congress, rather than the president's inherent authority. Opp'n 16. That is

13     wrong. Although § 284 authorizes the use of DOD resources for fencing construction in certain

14     instances, Defendants cannot exercise this general statutory authority in a manner that is

15     "incompatible with the expressed or implied will of Congress," *Youngstown*, 343 U.S. at 637

16     (Jackson, J., concurring), to not provide any barrier funding for FY 2019 beyond the $1.375

17     billion approved by Congress in the Consolidated Appropriations Act, Pub. L. No. 116-6, § 230,

18     133 Stat. 13, 28 (2019) (CAA). "It is one thing to draw an intention of Congress from general

19     language . . . where Congress has not addressed itself to a specific situation. It is quite impossible,

20     however, when Congress did specifically address itself to a problem . . . to find secreted in the

21     interstices of legislation the very grant of power which Congress withheld"; *Youngstown*, 343

22     U.S. at 609 (Frankfurter, J., concurring); *States* PI Order 16; *Sierra Club* PI Order 34.

23       Defendants are also incorrect that Congress must include an express prohibition to prevent

24     Defendants from using anything beyond the $1.375 billion. Opp'n 16. As this Court recognized,

25     "it is not Congress's burden to prohibit the Executive from spending the Nation's funds: it is the

26     Executive's burden to show that its desired use of those funds was affirmatively approved by

27

28

8

Pl. States' Reply ISO Mot. for Partial Summ. J. and Opp'n to Defs.' Mot. for Partial Summ. J. (4:19-cv-00872-HSG)

1   Congress." *States* PI Order 22 (internal quotation omitted); *Sierra Club* PI Order 40.[3] Defendants

2   have offered no new arguments to satisfy that burden here.

3                   **2.      Defendants Violated the Appropriations Clause**

4           Defendants do not dispute that the Appropriations Clause generally prohibits the executive

5   branch from "evad[ing] . . . congressionally established spending limits" made in a specific

6   appropriation by using a general appropriation for the same purpose. GAO Red Book at 3-408.

7   Instead, they assert that the specific/general principle does not apply here because they are using

8   appropriations from one agency, DOD, to supplement an appropriation of another, DHS. Opp'n

9   16-17. Defendants, however, offer no authority or justification for such a distinction. Moreover,

10  in the most analogous case, the GAO *prohibited* one DOD subagency from using a general

11  appropriation to dredge a river where a *different* subagency of DOD had funds appropriated for

12  the function of dredging. *Id.* at 3-408 to -09 (citing to B-139510). And this Court was correct that

13  the Appropriations Clause is not so feeble as to permit executive branch officials "displeased with

14  a restriction . . . imposed by Congress," *Office of Pers. Mgmt v. Richmond*, 496 U.S. 414, 428

15  (1990), to use DOD to "make a de facto appropriation to DHS, evading congressional control

16  entirely." *States* PI Order 22; *Sierra Club* PI Order 40.

17          While Defendants observe that typically "[a]n agency's discretion to spend appropriated

18  funds is cabined only by the text of the appropriation." Opp'n 17 (quoting *Salazar v. Ramah*

19  *Navajo Chapter*, 567 U.S. 182, 200 (2012)), the observation does not help Defendants here. The

20  specific/general principle does not require this Court to look beyond the text of the relevant

21  appropriations—the general drug-interdiction appropriation in the FY 2019 DOD Appropriations

22  Act, 132 Stat. at 2997, and the specific appropriation for barrier funding for the Rio Grande

23  Valley subject to enumerated conditions in the CAA, §§ 230-32. Based on the text of these two

24  appropriations, and the specific/general principle, it is clear that $1.375 billion was all that

25  Congress intended to provide for barrier construction in FY 2019 "from whatever source."

26  *Nevada v. DOE*, 400 F.3d 9, 16 (D.C. Cir. 2005).

27  _____

    [3] Although an explicit prohibition was unnecessary, Congress did prevent the executive branch
28  from using a provision such as 10 U.S.C. § 284 to "increase . . . funding for a program, project, or
    activity as proposed in the President's budget request for a fiscal year." CAA § 739.

9

Pl. States' Reply ISO Mot. for Partial Summ. J. and Opp'n to Defs.' Mot. for Partial Summ. J. (4:19-cv-00872-HSG)

1    Defendants are also wrong that application of the specific/general principle here is

2    "tantamount to a repeal by implication" of § 284. Opp'n 17 n.8. Implicit spending limits set by

3    Congress for a fiscal year are not the same as the "change [of] substantive law through

4    appropriations measures." *United States v. Will*, 449 U.S. 200, 222 (1980). Section 284 is not a

5    "substantive law" that requires the agency to take a certain action; it is an authorization that DOD

6    can act upon *if* there is a valid appropriation. And reading implicit spending limits set by

7    Congress into appropriations bills for a given fiscal year is widely understood as necessary to

8    ensure that agencies act in furtherance of a valid appropriation. *See Nevada*, 400 F.3d at 16; GAO

9    Red Book at 3-16-17 (reading the specific/general principle as part of the "necessary expense"

10   rule); *id.* at 3-409 (collecting a "legion" GAO cases supporting this principle).

11   Finally, contrary to Defendants' contention, DOD could use its authority under § 284 even

12   in years where Congress made specific appropriations to DHS for border fence construction.

13   Opp'n 17 n.8. If Congress had made clear in the appropriations bill its "intent to make a general

14   appropriation available to supplement or increase a more specific appropriation, or to relieve

15   [DOD] of the need to elect to use a single appropriation," GAO Red Book 3-411, DOD could also

16   have invoked its § 284(b)(7) authority. Additionally, Defendants overlook that in the past,

17   Congress has provided DOD with *specific* appropriations to provide support at the border,

18   including for barrier construction. *See, e.g.*, Pub. L. No. 110-116, 121 Stat. 1295, 1299 (2007)

19   (appropriating hundreds of millions of dollars to DOD for support to DHS "including . . .

20   *installing fences and vehicle barriers*"); Pub. L. No. 109-234, 120 Stat. 418, 480 (2006) (same);

21   Pub. L. No. 101-511, 104 Stat. 1856, 1873 (1990) (appropriating $28 million for drug

22   surveillance program at border). Thus, Congress knows how to provide a specific appropriation to

23   DOD to support DHS's border-barrier construction activities despite the existence of a specific

24   appropriation for DHS for that very same purpose, but declined to do so for FY 2019.

### 3.    Defendants Violated the Presentment Clause

26   Defendants' passing rebuttal to the States' Presentment Clause argument disregards the

27   similarities between the president's unilateral modification of Congress' $1.375 billion

28   appropriation for barrier construction in the CAA here and the president's cancellation of select

10

1    appropriations in *Clinton v. City of New York*. Opp'n 17-18. In *City of New York*, both houses of

2    Congress passed appropriations bills, the president signed those bills into law and,

3    simultaneously, rejected two provisions of those appropriations bills. 524 U.S. at 436. Here, in the

4    face of a request for $5.7 billion in barrier funding, both houses of Congress passed the CAA with

5    only $1.375 billion in barrier funding and only for the Rio Grande Valley, the president signed

6    that bill into law and, simultaneously, added $6.7 billion to that appropriation without geographic

7    limitation of where barriers may be built. *Sierra Club* PI Order 4-8. Like the line-item veto in *City

8    of New York*, the president's unilateral actions here "rely[] on [the president's] own policy

9    judgment" in "rejecti[on] [of] the policy judgment made by Congress," based "on the same

10   conditions that Congress evaluated when it passed those statutes." 524 U.S. at 438, 443-44. This

11   subversion of "the difficult judgments reached by Congress" violates the Presentment Clause.

12   *States* PI Order 16 (internal quotation omitted); *Sierra Club* PI Order 34.

13              **C.    Defendants Have Violated the APA**

14              Defendants do not dispute Plaintiff States have stated a claim under the APA that

15   Defendants' actions are "contrary to constitutional right, power, privilege, or immunity" and in

16   excess of statutory authority. 5 U.S.C. § 706(2)(B)-(C); *see* Opp'n 10 n.4. In addition, the States

17   have shown that Defendants' actions are arbitrary and capricious, further violating the APA. 5

18   U.S.C. § 706(2)(A). Even if DOD is owed some "deference" concerning its assessment of

19   military preparedness, under the APA, courts still must review whether the "agency considered

20   the relevant factors and articulated a rational connection between the facts found and the choices

21   made." *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009). The Administrative Record shows

22   that then-Director of the Army Staff, General Joseph M. Martin, set forth a number of adverse

23   consequences to the Army's core functions if funds were diverted to a border barrier. Pls.' MSJ

24   17-18; AR 51. Rather than attempting to dispute the validity of General Martin's assessment,

25   Defendants dismiss this three-star general as a "lower ranking DoD official" and ignore the fact

26   that the problems that he sets forth are "pressing unfunded readiness requirements," AR 51, not

27   merely a list of "various alternative Army projects to which funds could be transferred." Opp'n

28   18 n.9. And Defendants do not explain whether or how DOD took General Martin's assessment

11

into account. The Administrative Record instead indicates that they ignored it, thereby "entirely fail[ing] to consider an important aspect of the problem" in violation of the APA. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## II.   CALIFORNIA AND NEW MEXICO ARE ENTITLED TO INJUNCTIVE RELIEF

### A.   California and New Mexico Would Suffer Irreparable Harm

#### 1.   Harms to California's and New Mexico's Sovereignty

Tellingly, Defendants do not dispute that, but for Defendants' illegal transfer of funds, California and New Mexico would face harm to their sovereign interests in the protection of their air quality, water quality, and wildlife through the enforcement of their laws and regulations. *Compare* Pls. MSJ 19-21 *with* Opp'n 19-20. Instead, Defendants argue this injury is not cognizable because this Court preliminarily upheld Defendants' use of the IIRIRA waiver. Opp'n 20.[4] Defendants miss the point. Defendants can only effectuate the IIRIRA waiver to the detriment of the States if they have the funds to do so; without the funds to proceed with construction, the IIRIRA waiver is meaningless. Therefore, even if this Court upholds Defendants' use of the IIRIRA waiver permanently in the future (and Plaintiff States believe it should not), Plaintiff States' ability to implement their laws is still undermined, which undeniably infringes their sovereign interests. *Kansas*, 249 F.3d at 1227.

Defendants assert that the cases cited by Plaintiff States involved "irreparable injury from judicial injunctions prohibiting the enforcement of state law." Opp'n 19. But Defendants' construction activities, when combined with the IIRIRA waiver, have the similar effect of interfering with the States' ability to "employ . . . duly enacted statute[s]" enacted by the representatives of the people of California and New Mexico, *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers), and engage "in investigation and examination" on issues surrounding the States' environment, wildlife, and natural resources, *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). For example, a California water quality agency will be prevented from ensuring El Centro Project 1

---

[4] Plaintiff States' NEPA claim is not at issue in this motion and will be addressed in the second motion for summary judgment under the Court's Scheduling Order (ECF No. 174).

12

Pl. States' Reply ISO Mot. for Partial Summ. J. and Opp'n to Defs.' Mot. for Partial Summ. J. (4:19-cv-00872-HSG)

1   complies with water quality standards, Pls.' MSJ 6, and New Mexico will be limited in its ability

2   to review and enforce a dust-control implementation plan for the construction of El Paso Project

3   1, *id.* 8. Defendants do not explain why such injuries are not judicially cognizable.

4       Moreover, Defendants ignore a crucial case cited by the Plaintiff States, *Kansas v. United*

5   *States,* Pls.' MSJ 20, which did not involve the injunction of a state law. There, the Tenth Circuit

6   determined that the federal National Indian Gaming Commissions' decision to classify lands

7   within Kansas as "Indian land" divested the state of regulatory authority over those lands, which

8   was "sufficient to establish the real likelihood of irreparable harm" to the State's "sovereign

9   interests." *Kansas*, 249 F.3d at 1227-28. Likewise, here, Defendants' effectuation of the IIRIRA

10  waiver through illegally obtained funds limits the ability of the States to enforce and implement

11  state laws and regulations, and thus, irreparably injures the States' sovereign interests.

12      Defendants insist these harms should not matter because the IIRIRA waiver has been

13  preliminarily deemed by this Court to be valid, federal law is supreme, and state law is

14  subordinate to it. Opp'n 19-20. But state law's displacement by federal law depends upon the

15  federal government, in this case, the executive branch, acting in accordance with the Constitution.

16  *See City of New York*, 524 U.S. at 450 (Kennedy, J., concurring) ("The idea and the promise were

17  that when the people delegate some degree of control to a remote central authority, one branch of

18  government ought not possess the power to share their destiny without a sufficient check from the

19  other two."). Thus, if this Court concludes that Defendants' actions are unlawful, to maintain the

20  proper structural balance that our Constitution demands, California and New Mexico are entitled

21  to injunctive relief to prevent the irreparable harm that would befall their sovereign interests.

22          **2.    Harms to California's and New Mexico's Environment, Wildlife, and
                     Natural Resources**

23

24      Defendants do not dispute that California and New Mexico will suffer harm to their

25  environment, wildlife, and natural resources. Instead, they challenge the magnitude of that harm.

26  *See, e.g.*, Opp'n 21 ("even if some sheep abandon habitat near the El Centro 1 Project"), 22

27  ("very little new land will be disturbed"). For instance, Defendants do not dispute that El Centro

28  Project 1 and El Paso Project 1 could harm wildlife, including endangered species such as the

13

1    Peninsular Bighorn Sheep and the Mexican Wolf. *See id.* Instead, they assert the States must

2    demonstrate that "population- or species-level harms will result absent an injunction." Opp'n 20-

3    21. This Court has already rejected this requirement. *States* PI Order 31-32. The evidence of

4    potential death, interference with breeding and genetic diversity, and harm to these various

5    wildlife species (Pls.' MSJ 19-24) is sufficient to establish irreparable harm. *Nat'l Wildlife Fed'n*

6    *v. Burlington N.R.R.*, 23 F.3d 1508, 1512-13 (9th Cir. 1994); *see also States* PI Order 31.

7         Defendants also try to dispute the harms to Plaintiff States' wildlife with speculation about

8    mitigation measures. Defendants claim Customs and Border Protection (CBP) "will *likely*

9    recommend" mitigation measures to DOD that "*could reduce*" impacts to endangered Peninsular

10   Bighorn Sheep and make similar statements concerning other species. Opp'n 21-22 (emphasis

11   added). Defendants also state CBP will identify construction Best Management Practices, as well

12   as other mitigation measures which "*may*" be implemented post-construction, without specifying

13   which of those practices CBP will propose for these projects or how it will ensure that *DOD*

14   adopts them, much less whether these measures would mitigate all the harms in question. Opp'n

15   Ex. 6 (Enriquez Decl. ¶¶ 33, 50, 59) (emphasis added). And these statements of anticipated

16   mitigation are themselves admissions that harm will occur. Thus, Defendants' attempts are

17   insufficient to eliminate California and New Mexico's "expos[ure] to some significant risk of

18   irreparable injury," *see Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,

19   950 F.2d 1401, 1410 (9th Cir. 1991), especially given that CBP's assertions of speculative

20   mitigation measures are non-binding.

21        **B.    The Balance of Hardships and Public Interest Favor Granting a
               Permanent Injunction**
22

23        The balance of hardships and public interest support permanently enjoining Defendants'

24   illegal diversion of funds under §§ 8005, 9002 and 284 to construct border barriers. Defendants

25   point to the federal government's interest in drug interdiction, Opp'n 6-8, 23, but there is no

26   evidence in the record demonstrating that the planned construction in the El Paso and El Centro

27   sectors will have any impact on drug smuggling. *See supra* 7; *see also* Cayaban Decl. ¶¶ 6-15;

28   LeMaster Decls., ECF Nos. 182-8, 182-9; Supp. RJN Exhs. 10-28. Defendants also assert that

                                                     14

1    they may be deprived of the funds they seek to transfer because that funding will lapse at the end

2    of the fiscal year. Opp'n 23. Defendants, however, are free to use these funds on other projects

3    before the end of the fiscal year, and even if funding lapses, the money will remain in the United

4    States Treasury. More importantly, the government "cannot suffer harm from an injunction that

5    merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013),

6    and even if it could, such harm would be counterbalanced by the public's interest in ensuring that

7    Defendants comply with the law. *See E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1255

8    (9th Cir. 2018). Defendants' final argument is that they would incur penalties to contractors.

9    Opp'n 24. Any such penalties, however, are of Defendants' own making, *see* McFadden Decls.,

10   ECF Nos. 182-13, 182-14, and they do not outweigh the public interest in ensuring that

11   Defendants follow the law. Thus, the balance of equities and public interest decidedly support

12   granting a permanent injunction.

13        **C.    Enjoining Any Use of §§ 8005, 9002, and 284 for Barrier Construction in
14               California and New Mexico Is Appropriate**

15        There is no merit to Defendants' assertion that the States' requested injunctive relief is

16   overly broad. Opp'n 24-25. The States seek a narrow injunction to prohibit Defendants' diversion

17   of funds under §§ 8005, 9002, and 284 to construct border-related infrastructure in California and

18   New Mexico. ECF No. 176-1. If this Court determines that Defendants acted unlawfully in

19   transferring funds via §§ 8005, 9002, and 284 for barrier construction, limiting any injunction to

20   just the El Centro Project 1 and El Paso Project 1 could leave Defendants unconstrained from

21   diverting funds to construct other border infrastructure projects within California and New

22   Mexico using those same provisions. Therefore, the relief requested is appropriate. And because

23   Defendants have not satisfied the factors in *Nken v. Holder*, 556 U.S. 418 (2009), they are not

24   entitled to a stay. *Id.* at 434.

25                                       **CONCLUSION**

26        For the foregoing reasons, Plaintiff States of California and New Mexico request that the

27   Court grant their motion for partial summary judgment in full and deny Defendants' cross-

28   motion.

15

1  Dated: June 24, 2019                          Respectfully submitted,

2                                                XAVIER BECERRA
                                                 Attorney General of California
3                                                ROBERT W. BYRNE
                                                 SALLY MAGNANI
4                                                MICHAEL L. NEWMAN
                                                 Senior Assistant Attorneys General
5                                                MICHAEL P. CAYABAN
                                                 CHRISTINE CHUANG
6                                                EDWARD H. OCHOA
                                                 Supervising Deputy Attorneys General
7                                                BRIAN J. BILFORD
                                                 NOAH M. GOLDEN-KRASNER
8                                                SPARSH S. KHANDESHI
                                                 HEATHER C. LESLIE
9                                                JANELLE M. SMITH
                                                 JAMES F. ZAHRADKA II

10
                                                 */s/ Lee I. Sherman*
11
                                                 LEE I. SHERMAN
12                                               Deputy Attorneys General
                                                 *Attorneys for Plaintiff State of California*
13
14  HECTOR BALDERAS
    Attorney General of New Mexico
15  TANIA MAESTAS *(appearance pro hac vice)*
    Chief Deputy Attorney General
16  NICHOLAS M. SYDOW
    Civil Appellate Chief
17  JENNIE LUSK
    Assistant Attorney General, Director
18  MATTHEW L. GARCIA
    Governor's General Counsel
19  *Attorneys for Plaintiff State of New Mexico*

20

21

22

23

24

25

26

27

28

                                    16

1

**ATTESTATION OF SIGNATURES**

2

3

I, Lee I. Sherman, hereby attest, pursuant to Local Civil Rule 5-1(i)(3) of the Northern

District of California that concurrence in the filing of this document has been obtained from each

4

signatory hereto.

5

6

/s/ Lee I. Sherman

7

LEE I. SHERMAN
Deputy Attorney General
*Attorney for Plaintiff*
*State of California*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **California, et al. v Trump, et al.**          No.   **4:19-cv-00872**
           **(Border Wall 2019)**

I hereby certify that on June 24, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **PLAINTIFF STATES OF CALIFORNIA AND NEW MEXICO'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SECTIONS 284, 8005, AND 9002, AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT;**

- **PLAINTIFF STATES OF CALIFORNIA AND NEW MEXICO'S SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE RE: REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SECTIONS 284, 8005, AND 9002, AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; and**

- **DECLARATION OF MICHAEL CAYABAN IN SUPPORT OF PLAINTIFF STATES OF CALIFORNIA AND NEW MEXICO'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SECTIONS 284, 8005, AND 9002, AND IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 24, 2019, at Sacramento, California.

                L. Aguirre                                          
                Declarant                                              Signature