UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| STATE OF CALIFORNIA, et al., | Case No. 19-cv-00872-HSG |
|---|---|
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND CERTIFYING JUDGMENT FOR APPEAL** |
| v. | |
| DONALD J. TRUMP, et al., | |
| Defendants. | |
| | Re: Dkt. Nos. 176, 182 |

Pending before the Court are cross-motions for partial summary judgment filed by Plaintiff States California and New Mexico, and Defendants Donald J. Trump, in his official capacity as President of the United States; the U.S. Department of Defense ("DoD"); Mark T. Esper, in his official capacity as Acting Secretary of Defense[1]; Ryan D. McCarthy, in his official capacity as Acting Secretary of the Army[2]; Richard V. Spencer, in his official capacity as Secretary of the Navy; Heather Wilson, in her official capacity as Secretary of the Air Force; the U.S. Department of the Treasury; Steven T. Mnuchin, in his official capacity as Secretary of the Department of the Treasury; the U.S. Department of the Interior; David Bernhardt, in his official capacity as Secretary of the Interior[3]; the U.S. Department of Homeland Security ("DHS"); and Kevin K. McAleenan, in his official capacity as Acting Secretary of Homeland Security,[4] briefing for which

---

[1] Acting Secretary Esper is automatically substituted for former Acting Secretary Patrick M. Shanaham. *See* Fed. R. Civ. P. 25(d).
[2] Acting Secretary McCarthy is automatically substituted for former Secretary Esper. *See* Fed. R. Civ. P. 25(d).
[3] Secretary Bernhardt was named in his then-capacity as Acting Secretary, but was subsequently confirmed as Secretary by the U.S. Senate on April 11, 2019.
[4] Acting Secretary McAleenan is automatically substituted for former Secretary Kirstjen M. Nielsen. *See* Fed. R. Civ. P. 25(d).

is complete. Dkt. Nos. 176 ("Pls.' Mot."), 182 ("Defs.' Mot."), 183 ("Pls.' Reply"). The only issue presently before the Court concerns Defendants' intended reprogramming of funds under Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, 132 Stat. 2981 (2018), and subsequent use of such funds under 10 U.S.C. § 284 ("Section 284") for border barrier construction.[5]

After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion, and **DENIES** Defendants' motion.[6] The Court also certifies this judgment for immediate appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## I.  LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

The parties agree that the issue presently before the Court is properly resolved on their

---

[5] The relevant background for this motion is essentially unchanged since the Court's preliminary injunction orders in this and the related case, *Sierra Club v. Trump*, No. 4:19-cv-00892-HSG (N.D. Cal.). The Court thus incorporates in full here the factual background and statutory framework as set forth in the preliminary injunction order in the related case. *See* Order, *Sierra Club v. Trump*, No. 4:19-cv-00892-HSG (N.D. Cal. May 24, 2019), ECF No. 144.

[6] In light of the extended oral argument regarding these issues at the preliminary injunction hearing, *see* Dkt. No. 159, the Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted, *see* Civil L.R. 7-1(b).

2

cross-motions for partial summary judgment. Pls.' Mot. at 9; Defs.' Mot. at 9.

## II. DISCUSSION

In their motion, Plaintiffs request that the Court (1) enter final judgment in their favor declaring unlawful Defendants' transfer of Fiscal Year 2019 appropriated funds to the DoD's Section 284 account and those funds' subsequent use for border barrier construction; and (2) enjoin such unlawful use of funds. Pls.' Mot. at 1. Defendants' motion seeks a final determination that their intended use of funds under Sections 8005, 9002, and 284 for border barrier construction is lawful. Defs.' Mot. at 2. Defendants also request that the Court certify this judgment for appeal under Rule 54(b). *Id.* at 24–25.

### A. Declaratory Relief

Plaintiffs seek a declaratory judgment finding unlawful Defendants' (1) reprogramming of funds under Sections 8005 and 9002, and (2) use of those funds for border barrier construction under Section 284. *See* Pls.' Mot. at 1. Plaintiffs contend that Defendants' actions "(1) are ultra vires; (2) violate the United States Constitution's separation of powers principles, including the Appropriations and Presentment Clauses; and (3) violate the Administrative Procedure Act (APA)." *Id.*

Starting with Section 8005, the Court previously held that Plaintiffs were likely to succeed on their arguments that Defendants' intended reprogramming of funds under Section 8005 to the Section 284 account to fund border barrier construction in El Paso Sector 1 is unlawful. In particular, the Court found that Plaintiffs were likely to show that (1) the item for which funds are requested has been denied by Congress; (2) the transfer is not based on "unforeseen military requirements"; and (3) accepting Defendants' proposed interpretation of Section 8005's requirements would raise serious constitutional questions.[7] Dkt. No. 165 ("PI Order") at 13–24.

The Court previously only considered Defendants' reprogramming and subsequent use of funds for border barrier construction for El Paso Sector Project 1. It did not consider Defendants'

---

[7] The Court did not consider whether Defendants' reprogramming of funds was for a "higher priority item"—an independently necessary requirement under Section 8005—because Defendants' planned use of such reprogrammed funds failed multiple other Section 8005 requirements. The Court similarly does not consider the "higher priority item" requirement here.

3

more-recently announced reprogramming and subsequent diversion of funds for border barrier construction for the El Centro Sector Project, pending further development of the record as to this project. *See id.* at 13 n.9. To fund this project, Defendants again invoked Section 8005, as well as DoD's "special transfer authority under section 9002 of the Department of Defense Appropriations Act, 2019, and section 1512 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019." *See* Dkt. No. 118-1 ("Rapuano Second Decl.") ¶ 7. Defendants' Section 9002 authority, however, is subject to Section 8005's limitations. *See* Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, § 9002, 132 Stat. 2981, 3042 (2018) (providing that "the authority provided in this section is in addition to any other transfer authority available to the Department of Defense and is subject to the same terms and conditions as the authority provided in section 8005 of this Act"); *see also* Defs.' Mot. at 9 n.3 (acknowledging that Section 9002 is subject to Section 8005's requirements). Because Defendants agree that all such authority is subject to Section 8005's substantive requirements, the Court refers to these requirements collectively by reference to Section 8005.

In their pending motion, "Defendants acknowledge that the Court previously rejected [their] arguments about the proper interpretation of § 8005 in its [preliminary injunction order]." Defs.' Mot. at 9. Defendants contend that the Court's findings were wrong for two reasons: (1) "Plaintiffs fall outside the zone of interests of § 8005 and thus cannot sue to enforce it"; and (2) "DoD has satisfied the requirements set forth in § 8005." *Id.* at 9–12. But Defendants here offer no evidence or argument that was not already considered in the Court's preliminary injunction order. For example, Defendants continue to argue that under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the zone-of-interests test applies to Plaintiffs' claims. *Compare* Opp. at 9–10, *with* Dkt. No. 89 at 18–19. And the Court continues to find that the test has no application in an *ultra vires* challenge, which operates outside of the APA framework, and the Court incorporates here its prior reasoning on this point. PI Order at 11–12.

Defendants also continue to assert that DoD did not transfer funds for an item previously denied by Congress and that the transfer was for an "unforeseen" requirement. *Compare* Opp. at 10–11, *with* Dkt. No. 89 at 19–20. But Defendants again present no new evidence or argument for

4

why the Court should depart from its prior decision, and it will not. The Court thus stands by its prior finding that Defendants' proposed interpretation of the statute is unreasonable, and agrees with Plaintiffs that Defendants' intended reprogramming of funds under Section 8005—and necessarily under Section 9002 as well—to the Section 284 account for border barrier construction is unlawful. *See* PI Order at 13–24. Because no new factual or legal arguments persuade the Court that its analysis in the preliminary injunction order was wrong, Plaintiffs' likelihood of success on the merits has ripened into actual success. The Court accordingly **GRANTS** Plaintiffs' request for declaratory judgment that such use of funds reprogrammed under Sections 8005 and 9002 for El Paso Sector Project 1 and El Centro Sector Project is unlawful.[8]

Turning to Section 284, the Court finds that it need not determine whether Plaintiffs are entitled to declaratory judgment that Defendants' invocation of Section 284 is also unlawful. When a party requests declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Having determined that Defendants' proposed reprogramming of funds under Sections 8005 and 9002 is unlawful, no immediate adverse legal interests warrant a declaratory judgment concerning Section 284. Defendants acknowledge that all of the money they plan to spend on border barrier construction under Section 284 is money transferred into the relevant account under Sections 8005 and 9002. *See* Dkt. No. 151 at 4. Given this acknowledgment, the Court's ruling as to Sections 8005 and 9002 obviates the need to independently assess the lawfulness of Defendants' invocation of Section 284.

//

//

---

[8] Plaintiffs' motion seeks a declaratory judgment that any use of reprogrammed funds for border barrier construction is unlawful as (1) *ultra vires*; (2) unconstitutional, and (3) in violation of the APA. Given that the Court determines Defendants' use of such funds is *ultra vires*, which resolves Plaintiffs' claim concerning such use of funds, the Court declines to issue a broader declaratory judgment.

5

**B.     INJUNCTIVE RELIEF**

It is a well-established principle of equity that a permanent injunction is appropriate when: (1) a plaintiff will "suffer[] an irreparable injury" absent an injunction; (2) available remedies at law are "inadequate;" (3) the "balance of hardships" between the parties supports an equitable remedy; and (4) the public interest is "not disserved." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Defendants do not dispute that available remedies at law are inadequate. The Court thus need only consider the remaining factors. But because the Court finds that Plaintiffs have not established irreparable injury—an independently necessary burden for Plaintiffs—the Court does not consider the balance of hardships and public interest factors.

Plaintiffs present two theories of irreparable injury: (1) that California and New Mexico will be irreparably harmed by their inability to enforce state laws concerning the protection of environmental and natural resources; and (2) that border barrier construction will harm California and New Mexico's animals and plants. *See* Pls.' Mot. at 19–24.

The Court begins with Plaintiffs' second theory. With respect to the El Centro Sector Project, California contends that border barrier construction will threaten various animal and plant species. Pls.' Mot. at 21–22. Of particular concern to California is that construction in this sector potentially could hinder the migration of Peninsular bighorn sheep across the southern border and that pregnant ewes might be scared away by construction activities. *Id.* But Plaintiffs' supporting declarations do not indicate that Defendants' challenged action poses the requisite "threat of future demonstrable harm to a protected species." *See* PI Order at 31. To start, Plaintiffs only contend that Peninsular bighorn sheep have crossed the southern border "*west* of the project area," and that pregnant ewe populations may seek a critical area "adjacent" to the project site. Pls' Mot. at 21–22. In other words, Plaintiffs do not even allege that the protected species crosses the southern border where the challenged construction would occur. Finally, as to the potential disturbance caused by construction activities, Plaintiffs only allege that pregnant ewes may be "adversely affected." *Id.* But reference to a tenuous adverse effect is insufficient to explain why temporary construction would pose a threat of demonstrable harm to the species. All told, California has failed to carry its burden of presenting evidence that the challenged action would pose a threat of

6

future demonstrable harm to the Peninsular bighorn sheep.[9]

New Mexico similarly fails to prove a threat of future demonstrable harm. With respect to the El Paso Sector Project, New Mexico primarily contends that construction might hamper repopulation efforts of the Mexican wolf because genetic interchange benefits the species. *See* Pls.' Mot. at 23–24. As an initial matter, the Court has some doubt that New Mexico's purported interest in the international travels of a few animals between its state and another sovereign nation could ever justify a permanent injunction against the U.S. government. But even setting that aside, New Mexico only identifies two instances of Mexican wolves crossing the border, one of which returned to Mexico, and neither of which Plaintiffs contend are known to have bred with Mexican wolves on the other side of the border. *Id.* at 23. New Mexico's speculation that a border barrier *might* prevent interbreeding, which *might* hamper genetic diversity, which *might* render Mexican wolves *more susceptible* to diseases falls far short of the necessary demonstrable evidence of harm to a protected species, and thus does not entitle New Mexico to a permanent injunction.[10]

Turning to Plaintiffs' first theory, the crux of the parties' dispute concerns whether Defendants' issuance of IIRIRA waivers related to the challenged border barrier construction projects nullifies the States' interest in enforcing their laws concerning the protection of the environment. Defendants contend that California and New Mexico cannot establish irreparable injury to their enforcement of state laws because the IIRIRA waivers set aside all such legal requirements, such that California and New Mexico lack a legal interest capable of being irreparably harmed. *See* Defs.' Mot. at 19–20; *see also* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 84 Fed. Reg. 17,185-01 (Apr. 24, 2019) (waiving state laws related to the El Paso Sector Project);

---

[9] California's other purported harms to its wildlife are similarly unavailing. It is not enough, for example, for California to argue that construction could possibly disrupt plant life or harm Flat-tailed horned lizards and burrowing owls, especially when Defendants present evidence that relevant agencies regularly implement mitigation measures that successfully prevent such harm. *See* Defs.' Mot. at 21–22.

[10] New Mexico's purported harm to other wildlife from construction activity fails for the same reasons that California's similar allegations fail. *See supra* note 9.

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 84 Fed. Reg. 21,800 (May 15, 2019) (waiving state laws related to the El Centro Sector Project); REAL ID Act of 2005, Pub. L. No. 109-13, § 102, 119 Stat. 231, 306 (May 11, 2005) (amending Section 102(c) to reflect that the Secretary "ha[s] the authority to waive all legal requirements" that, in the "Secretary's sole discretion," are "necessary to ensure expeditious construction" of barriers and roads). Plaintiffs counter that the waivers' effectiveness depends on Defendants first having authority to use funds in a certain manner. *See* Pls.' Reply at 12–13. As Plaintiffs put it, "without the funds to proceed with construction, [an] IIRIRA waiver is meaningless." *Id.* at 12.

Whether the relevant waivers deprive states of their sovereign interests in enforcing state laws for purposes of an irreparable injury analysis, or merely deprive states of their ability to bring suit to vindicate those interests, is unclear as a legal matter. The Court need not resolve this issue, however, because whether or not the border barrier construction at issue in this order could harm California and New Mexico's sovereign interests, the contested use of funds for such construction will not occur in the absence of injunctive relief. This is because the Court has permanently enjoined the relevant Defendants in the related action from proceeding with such construction. *See* Order at 10, *Sierra Club v. Trump*, No. 4:19-cv-00892-HSG (N.D. Cal. June 28, 2019), ECF No. 185 (permanently enjoining the use of reprogrammed funds for border barrier construction for El Paso Sector Project 1 and the El Centro Sector Project). Accordingly, no irreparable harm to California and New Mexico will result from the denial (without prejudice) of their duplicative requested injunction.

### C. Certification for Appeal

Finally, Defendants request that the Court certify this judgment for appeal under Rule 54(b). Appellate courts generally only have jurisdiction to hear appeals from final orders. *See* 28 U.S.C. § 1291. Rule 54(b) allows for a narrow exception to this final judgment rule, permitting courts to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Entry of judgment under Rule 54(b) thus requires: (1) a final judgment; and (2) a determination that there is no just

8

reason for delay of entry. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980)).

### 1. Finality of Judgment

A final judgment is "a decision upon a cognizable claim for relief" that is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp.*, 446 U.S. at 7 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). The Court finds this requirement satisfied because the Court's award of partial summary judgment in this order is "an ultimate disposition" of Plaintiffs' claims related to Defendants' purported reliance on Sections 8005, 9002, and 284 for border barrier construction.

### 2. No Just Reason for Delay

As the Ninth Circuit has explained, "[j]udgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). Accordingly, an explanation of findings "should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court." *Id.* at 965. "The greater the overlap the greater the chance that [the Court of Appeals] will have to revisit the same facts—spun only slightly differently—in a successive appeal." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 (9th Cir. 2005). "[P]lainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Id.* at 879 (internal quotation marks omitted).

The Court finds there is no just reason for delay under the circumstances. In their motion, Defendants contend that "[t]he legal and factual issues do not 'intersect and overlap' with the outstanding claims in this case, which focus on separate statutory authorities, and final judgment on these claims will not result in piecemeal appeals on the same sets of facts." Defs.' Mot. at 25. The Court agrees. Whether Defendants' actions comport with the statutory requirements of Sections 8005 and 9002 and whether Defendants' actions comport with the remaining statutory

9

requirements related to outstanding claims are distinct inquiries, largely based on distinct law. The Court also recognizes that Defendants' appeal of the Court's preliminary injunction order in the related case, *Sierra Club v. Trump*, is currently pending before the Court of Appeals, which recently issued an order holding the briefing on that appeal in abeyance pending partial summary judgment orders. *See Sierra Club v. Trump*, No. 19-16102 (9th Cir. 2019), ECF Nos. 65–66. This suggests to the Court that the Court of Appeals agrees that "sound judicial administration" is best served by the Court certifying this judgment for appeal, in light of the undisputedly significant interests at stake in this case. *See Wood*, 422 F.3d at 879.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for partial summary judgment and **DENIES** Defendants' motion for partial summary judgment. Specifically, the Court **GRANTS** Plaintiffs' request for declaratory judgment that Defendants' intended use of funds reprogrammed under Sections 8005 and 9002 of the Department of Defense Appropriations Act, 2019, for border barrier construction in El Paso Sector 1 and El Centro Sector is unlawful. The Court **DENIES** Plaintiffs' requests for (1) any broader declaratory judgment, and (2) a permanent injunction.

The Clerk is directed to enter final judgment in favor of Plaintiffs and against Defendants with respect to Defendants' purported reliance on Sections 8005, 9002, and 284 to fund border barrier construction. This judgment will be certified for immediate appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: 6/28/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

10