JAMES M. BURNHAM
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
KATHRYN C. DAVIS
MICHAEL J. GERARDI
LESLIE COOPER VIGEN
RACHAEL WESTMORELAND
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 616-5084
Fax:   (202) 616-8470
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | No. 4:19-cv-00872-HSG<br>No. 4:19-cv-00892-HSG<br><br>**NOTICE OF DECISION BY THE DEPARTMENT OF DEFENSE TO AUTHORIZE BORDER BARRIER PROJECTS PURSUANT TO 10 U.S.C. § 2808** |
| SIERRA CLUB, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | |

Defendants hereby notify the Court and parties in the above-captioned cases that, on September 3, 2019, the Secretary of Defense authorized eleven border barrier projects in California, Arizona, New Mexico, and Texas pursuant to 10 U.S.C. § 2808.  A description of the project locations and estimated cost of each project is attached as Exhibit 1.  *See* Memorandum from the Secretary of Defense re: Guidance for Undertaking Military Construction Projects Pursuant to Section 2808 of Title 10, U.S. Code (Sept. 3, 2019).  In accordance with 10 U.S.C. § 2808(b), the Secretary of Defense has notified Congress of his decision to undertake military construction projects authorized by Section 2808.  *See, e.g.,* Letter from Secretary of Defense Mark Esper to Sen. James Inhofe (Sept. 3, 2019) (attached as Exhibit 2).

To fund these projects, the Secretary of Defense has authorized the Department of the Army to expend up to $3.6 billion in unobligated military construction funds.  *See id.*  The Secretary of Defense has further directed that, initially, only funds associated with deferred military construction projects located outside of the United States will be provided to the Department of the Army.  *See id.*  Deferred military construction projects outside of the United States account for $1.8 billion of the required funds.  *See id.*  The remaining $1.8 billion associated with deferred military construction projects located in the United States (including U.S. territories) will be made available to the Secretary of the Army when it is needed for obligation.  *See id.*  Defendants will provide the Court and parties with the list of unobligated military construction projects currently identified for deferral as soon as congressional notifications are complete but no later than Friday, September 6, 2019.

The timeline for obligating funds and beginning construction of the Section 2808 projects depends on type of expenditure and the project's location.  *See* Declaration of Brigadier General Glenn Goddard ¶¶ 7–12 (attached as Exhibit 3).  The U.S. Army Corps of Engineers (USACE) has identified four types of expenditures associated with the projects.  *See id.* ¶¶ 7–10.  First, USACE expects to begin incurring project-related administrative costs as soon as funds are made available.  *See id.* ¶ 7.  These costs include labor costs for USACE employees, travel costs, and other overhead costs related to the approved projects.  *Id.*  Because it has not yet identified the number of personnel or the amount of their time needed to manage these projects, USACE is

unable to provide a precise estimate of the amount of money it would need for these administrative costs. *Id.* USACE is developing a staffing plan and a precise budget for its administrative costs, but based on experience from other border barrier projects, once fully staffed, USACE estimates the likely administrative costs will be approximately $1 million per week. *Id.*

Second, USACE estimates it will spend approximately $500,000 on costs associated with initial real estate activities necessary to acquire or obtain administrative jurisdiction of land not currently under the jurisdiction of the Department of Defense (DoD). *See id.* ¶ 8. Some of the project areas are on land not currently under the control of DoD, thus DoD must acquire administrative jurisdiction over the land and add it to the Department of the Army's real property inventory, either as a new military installation or as part of an existing military installation. *See* Exhibit 1. As part of that process, USACE must acquire, among other things, preliminary title evidence on all lands necessary for the projects. *See* Goddard Decl. ¶ 7. USACE expects to begin obligating and expending funds for this category of expenses starting on September 23 and continuing over the course of the next several months. *See id.*

Third, USACE will use funds made available for the approved Section 2808 projects to provide just compensation to landowners for land acquired through negotiated purchases or condemnation, for payments of relocation assistance benefits, and for the provision of substitute facilities, where appropriate. *See id.* ¶ 9. USACE does not expect to expend any funds for these purposes before April 2020. *Id.*

Fourth, USACE will use Section 2808 funds for barrier constriction contracts. *See id.* ¶ 10. The timeline for obligating funds for construction contracts and beginning construction depends on the location of each project. *Id.* The project locations generally fall into three categories, as explained below.

### A. Projects on the Barry M. Goldwater Range

Two border barrier projects (Yuma 2 and Yuma 10/27) are located on the Barry M. Goldwater Range, an existing military installation in Arizona that is under the administrative jurisdiction of the Department of the Navy. *See id.* ¶ 10.a. USACE will not award a contract

(thereby obligating funds for all contract costs) for border barrier construction on the Goldwater Range earlier than October 3, 2019. *Id.* The contract for these two barrier-construction projects is estimated to cost $567 million. *Id.* No ground-disturbing activities, including geotechnical borings and clearing and grubbing, will occur before 20 days after the date of contract award. *Id.* The earliest date on which substantial construction could occur for these projects is 40 days after contract award. *Id.*

### B. Projects on Federal Public Domain Land

There are seven projects located, at least in part, on Federal public domain land currently under the administrative jurisdiction of the Department of the Interior. *See id.* ¶ 10.b. The projects and estimated costs are: Yuma 3 ($630 million); Yuma 6 ($65 million); San Diego 4 ($67 million); San Diego 11 ($57 million); El Paso 2 ($476 million); El Paso 8 ($164 million); and El Centro 9 ($286 million). *Id.* Yuma 3 and San Diego 4 are exclusively on Federal public land. *Id.* The remaining five projects involve various combination of Federal public domain land; Federal non-public domain land that can be transferred between Federal agencies under the Federal Property and Administrative Services Act of 1949, as amended (the Property Act); and non-Federal land.[1] The Department of the Army anticipates obtaining administrative jurisdiction over the portions of these seven projects that are on Federal public domain land no earlier than 30 days after the Secretary's decision. *Id.* The processes required for USACE to obtain jurisdiction over Federal non-public domain land and non-Federal land will require additional time and are not expected to conclude before April 2020. *Id.* The earliest date on which USACE could award a construction contract and obligate funds for any of these projects is 30 days after the Department of the Army has accepted administrative jurisdiction and recorded the property in its records as a military installation. *Id.* USACE would not need to acquire all of the land in a project area before awarding a contract and may proceed with contract award for a project once some portion of the land is under the administrative jurisdiction of the Department of the Army.

---

[1] USACE's understanding of the current land status of the seven project areas is based on the best information available at this time. *See* Goddard Decl. ¶ 10.b.

*Id.* USACE anticipates that the construction contracts for Yuma 3 and San Diego 4 will be the first of these seven projects ready for award and obligation. *Id.* The earliest date on which any ground-disturbing activities could occur for these projects is 20 days after contract award. *Id.* The earliest date on which substantial construction could occur for these projects is 40 days after contract award. *Id.*

### C. Projects Exclusively on Non-Public Land

The remaining two projects (El Centro 5 and Laredo 7) are located entirely on Federal non-public domain land and non-Federal land. *See id.* ¶ 10.c. To obtain administrative jurisdiction over non-Federal land will require either purchase or condemnation. *Id.* As explained above, USACE does not expect to expend funds for either purchase or condemnation before April 2020. *Id.* Similarly, USACE does not expect to obtain jurisdiction of Federal non-public domain land before April 2020. *Id.* The earliest date on which the Task Force could award a construction contract for these projects is 30 days after the Department of the Army has recorded the property in its records as a military installation. *Id.* The earliest date on which any ground-disturbing activities could occur for these projects is 20 days after contract award. *Id.* The earliest date on which substantial construction could occur for these projects is 40 days after contract award. *Id.* The estimated costs for construction of these projects is $20 million for El Centro 5 and $1.268 billion for Laredo 7. *Id.*

\*\*\*

In sum, the soonest any ground disturbing activity will begin for any of the Section 2808 projects is October 23, 2019 for the two projects on BMGR (Yuma 2 and Yuma 10/27). *Id.* ¶ 11. The Corps anticipates that ground disturbing activities for the Yuma 3 and San Diego 4 projects would begin next, approximately 30 days later. *Id.* The timetable for ground disturbing activities on the remaining projects is uncertain, but will not occur earlier than as indicated for Yuma 2, Yuma 10/27, Yuma 3, and San Diego 4. *Id.*

With respect to the obligation of funds, money for the projects will be drawn initially only from funds associated with deferred military construction projects located outside of the United States. *See* Exhibit 2. The Corps will begin immediately incurring project-related

administrative costs that are expected to be no more than $1 million per week.  *See* Goddard Decl. ¶ 12.  Beginning no sooner than September 23, 2019, the Corps will start expending additional funds, not expected to exceed $500,000, on initial real estate activities necessary to acquire or obtain administrative jurisdiction of non-DoD land.  *Id.*  The earliest contract award and obligation of funds for construction will occur no sooner than October 3, 2019, for the two projects on BMGR (Yuma 2 and Yuma 10/27), which are estimated to cost $567 million.  *Id.*  It is expected that the next construction contracts to be awarded and obligated will be Yuma 3 ($630 million) and San Diego 4 ($67 million), approximately 30 day later.  *Id.*  The timetable for award and obligation of the remaining contracts is uncertain, but will not occur earlier than as indicated for Yuma 2, Yuma 10/27, Yuma 3, and San Diego 4.  *Id.*

DATE: September 3, 2019               Respectfully submitted,

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Andrew I. Warden*
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 616-5084
Fax:   (202) 616-8470

*Attorneys for Defendants*